**MITSUBISHI HEAVY INDUSTRIES, LTD., Plaintiff,**

v.

**GEO. J. MEYER MANUFACTURING DIVISION OF "AUTOMATIC" SPRINKLER CORPORATION OF AMERICA, Defendant.**

No. 81 C 3184.

United States District Court, N. D. Illinois, E. D.

July 8, 1981.

Richard Briggs and Robert J. Lynch, Seki, Jarvis & Lynch, Chicago, Ill., for plaintiff.

Peter C. Karegeannes and John Rothstein, Quarles & Brady, Milwaukee, Wis., for defendant.

## ORDER

BUA, District Judge.

The plaintiff, Mitsubishi Heavy Industries, Ltd. (MHI), a Japanese corporation, brings this action against the defendant, Geo. J. Meyer Manufacturing Division of "Automatic" Sprinkler Corporation of America (Meyer), an Ohio corporation, seeking declaratory and injunctive relief pursuant to Title 28 U.S.C. § 2201 and Fed.R. Civ.P. Rule 65. Jurisdiction of the action is based upon Title 28 U.S.C. § 1332(a), there being diversity of citizenship between the parties and the amount in controversy exceeds $10,000 exclusive of interest and costs. Before the court are the parties' cross motions for summary judgment pursuant to Rule 56, Fed.R.Civ.P.

The facts surrounding this controversy are not in dispute and are substantially as

follows. On March 3, 1969, MHI entered a licensing agreement with Meyer. Pursuant to this agreement, Meyer licensed to MHI the right to utilize certain patented technology and know-how related to the manufacture of bottle and canning machinery. Under the agreement, MHI had the right to market such machinery in various countries. In return, MHI was to pay certain fees and royalties to Meyer based upon a percentage of the net sales of the machinery. This agreement was to remain in effect through November 4, 1979.

During the term of this agreement, MHI furnished Meyer with semi-annual royalty reports accompanied by royalty payments. During this ten year period, Meyer received approximately 4.5 million dollars in royalties. On February 12, 1980, approximately three months after the expiration of the agreement, Meyer notified MHI that Meyer's accountant would contact MHI concerning an audit. The parties negotiated issues related to their respective rights under the license agreement for approximately one year. On April 10, 1981, Meyer filed a demand for arbitration with the American Arbitration Association asserting that MHI failed to pay all royalties due under the agreement. On June 8, 1981, MHI commenced the present action seeking a declaration that it was not subject to arbitration. This court entered a temporary restraining order staying arbitration pending the resolution of this question.

At issue between the parties is the construction of the terms and conditions of the license agreement, in particular, the arbitration clause. Section 9.1 of the license agreement provides:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association or such other rules as it may designate. This Agreement shall be enforceable and judgment upon any award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

In addition, section 10.1 of the agreement provides that the agreement shall continue in force until the 4th day of November, 1979.

MHI contends that the duty to arbitrate does not survive the expiration of the license agreement. MHI further contends that because the dispute concerning royalties arose subsequent to the expiration of the agreement, the controversy does not arise under the terms of the agreement. Meyer contends that the arbitration clause governs the parties' relationship and that arbitration was properly pursued.

■ Under the contract entered by the parties, Meyer's claim would certainly be subject to arbitration. In interpreting an arbitration clause, the court must keep in mind that there exists a strong presumption in favor of arbitration. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In determining whether arbitration should be compelled, the court must make a threshold inquiry into whether the dispute is covered by the contract's arbitration clause. In making this inquiry, "[d]oubts should be resolved in favor of coverage," and arbitrability "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of any interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior and Gulf Navigation Co., supra*, 363 U.S. at 581, 80 S.Ct. at 1352; *American Radiator & Standard Sanitary Corp. v. Local 7, International Brotherhood of Operative Potters, AFL–CIO*, 358 F.2d 455 (6th Cir. 1966); *Siam Feather & Forest Products Company, Inc. v. Midwest Feather Co., Inc.*, 503 F.Supp. 239 (S.D.Ohio 1980).

■ In the present action, the clause at issue governs "any controversy or claim arising out of or relation to" the license agreement. Meyer's claim for royalties is

integrally related to the agreement. The court therefore finds that the asserted claim arises out of and relates to the licensing agreement.

■ It is next argued by MHI that Meyer's claim is in reality an audit and that the license agreement does not provide Meyer with this remedy. In determining the arbitrability of a claim, the court will take the factual allegations and issues in the complaint at face value. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *see also Lundell v. Massey-Ferguson Services N.V.*, 277 F.Supp. 940 (N.D.Iowa 1967); *Younker Brothers, Inc. v. Standard Construction Co.*, 241 F.Supp. 17 (S.D.Iowa 1965). The court will not speculate as to Meyer's motives in asserting its claim. Meyer's claim will be viewed as made in good faith. "The duty to arbitrate is not diminished by the fact that the claim of one of the parties may be lacking in merit." *Warren Brothers Co. v. Cardi Corp.*, 471 F.2d 1304 (1st Cir. 1973); *J. S. & H. Construction Co. v. Richmond County Hospital Authority*, 473 F.2d 212 (5th Cir. 1973); *Bigge Crane and Rigging Co. v. Docutel Corp.*, 371 F.Supp. 240 (E.D.N.Y.1973). Meyer's arbitration claim is expressly for unpaid royalties. Whether Meyer's claim is meritorious or not is for the arbitrator's sole determination.

The final issue to resolve is whether Meyer is precluded from arbitration because its demand for arbitration was subsequent to expiration of the agreement. In *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), the petitioner entered a collective bargaining agreement with the respondent labor union. By its terms, the agreement was to remain in effect from 1970 until 1973, and thereafter, until a new agreement was entered, or the existing agreement was terminated upon seven days notice by one of the parties. For reasons not here important, the agreement was terminated. The petitioner subsequently refused to submit to arbitration on the grounds that the obligation to arbitrate terminated with the collective bargaining agreement.

The issue before the Court was "whether a party to a collective bargaining contract may be required to arbitrate a contractual dispute ... pursuant to the arbitration clause of that agreement even though the dispute, although governed by the contract, arises after its termination." In resolving the above issue in the affirmative, the Court noted that the obligation of the parties to arbitrate may survive a contract termination when the dispute is over an obligation that arose under the expired agreement. *Id.* at 252, 97 S.Ct. at 1072. The Court reasoned that the dispute would have been subject to arbitration during the agreement's term. Therefore, "in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." *Id.* at 252–53, 97 S.Ct. at 1072.

By agreement to arbitrate, the parties implicitly express a preference to resolve any disputes through arbitration rather than litigation. As noted in *Nolde*, "it is because of his special experience, expertise, and selection by the parties that courts generally defer to an arbitrator." *Id.* at 253, 97 S.Ct. at 1073. Thus, while the relations of the parties in the present case change with termination of the contract, their reasons for deciding to arbitrate disputes would not be seriously affected. The Court in *Nolde* stated:

> The contracting parties' confidence in the arbitration process and an arbitrator's presumed special competence in matters concerning bargaining agreements does not terminate with the contract. Nor would their interest in obtaining a prompt and inexpensive resolution of their disputes by an expert tribunal. Hence, there is little reason to construe this contract to mean that the parties intended their contractual duty to submit grievances and claims arising under the contract to terminate immediately on the termination of the contract; the alterna-

tive remedy of a lawsuit is the very remedy the arbitration clause was designed to avoid.

*Id.* at 254, 97 S.Ct. at 1073.

The only distinguishing factor between *Nolde* and the present case is that *Nolde* concerned a labor agreement whereas the present case involves a dispute that arose out of an agreement executed in a commercial setting. The same rule enunciated in *Nolde* applies to commercial arbitration clauses. In *Batson Yarn and Fabrics Machinery Group, Inc. v. Saurer-Allma*, 311 F.Supp. 68 (D.S.C.1970), the court noted that absent an express limitation on arbitration, there is "no reason to restrict arbitrable disputes that arise under the contract to situations where the demand for arbitration precedes the termination of the contract." *Id.* at 72.

Meyer's claim for unpaid royalties arose under the terminated agreement. Therefore, in view of the above-mentioned principles, it should not be precluded from arbitrating its claim merely because arbitration was not demanded prior to termination of the agreement.

Accordingly, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted, dismissing the action and directing the plaintiff to proceed with arbitration.