**PATTEN SECURITIES CORP., INC., Appellant,**

v.

**DIAMOND GREYHOUND & GENETICS, INC., Appellee.**

No. 86–5646.

United States Court of Appeals, Third Circuit.

Argued March 6, 1987.

Decided May 21, 1987.

---

Matthew Farley, Brian F. McDonough (argued), Shanley & Fisher, P.C., Morristown, N.J., for appellant.

Eric A. Savage (argued), David B. Moser, Lampf, Lipkind, Prupis & Petigrow, West Orange, N.J., for appellee.

Before GIBBONS, Chief Judge, and SEITZ and ALDISERT, Circuit Judges.

GIBBONS, Chief Judge:

Patten Securities Corp. (Patten) appeals from an order of the district court denying its motion for an order directing Diamond Greyhound & Genetics, Inc. (Diamond) to discontinue a pending arbitration proceeding, and granting Diamond's cross motion to dismiss or stay the instant action pending the resolution of that arbitration. We hold that we have appellate jurisdiction, and that the order should be affirmed.

## I.

Diamond is a Colorado corporation engaged in the business of breeding and training greyhound dogs. Patten, a New Jersey corporation, is a securities broker/dealer, and a member of the National Association of Securities Dealers (NASD). Diamond negotiated to have Patten act as the coordinating underwriter for the sale of 200,000 units of Diamond shares and warrants at $4.50 per unit. These negotiations led to an agreement, dated October 15, 1985, in which Patten was designated as the coordinating underwriter, and in which the underwriters undertook to buy the 200,-000 units at $4.50 per unit, subject to various conditions.

The sale of the securities never occurred. Patten contends that Diamond failed to perform several conditions precedent, and that some of Diamond's representations and warranties were unfulfilled. Diamond contends that Patten was obligated to purchase the securities, that Patten breached the underwriting agreement, and that Patten should pay damages for that breach.

As a NASD member, Patten is bound by its rules. *NASD Rules of Fair Practice*, Art. I, Sec. 5, ¶ 2005, *reprinted in* NASD Manual (CCH) 2011. NASD has adopted a Code of Arbitration Procedure under which a customer may compel arbitration of any dispute eligible for arbitration. *NASD Code of Arbitration Procedures*, Sec. 12, ¶ 3712, *reprinted in* NASD Manual (CCH) 3713. Contending that it is a public customer within the meaning of the Code of Arbitration, Diamond filed a statement of claim against Patten with the NASD Director of Arbitration on January 29, 1986. NASD accepted the claim and instituted arbitration proceedings. Patten, in an answer to the claim, contended that Diamond is not a public customer and the claim is not arbitrable.

Patten also filed a complaint in the district court against Diamond seeking a declaratory judgment that it has no liability to Diamond because no binding underwriting agreement exists. In the alternative, Patten contends that if an agreement exists, Diamond is in breach, or has failed to perform necessary conditions precedent to Patten's obligation. One Count also alleges that if there is a binding contract, Diamond failed to deliver certificates representing the securities at the time specified by the contract, and seeks compensatory damages for such nondelivery in an amount to be determined at trial. Federal jurisdiction is predicated on 28 U.S.C. § 1332 (1982), and it is alleged that the amount in controversy exceeds $10,000. Thus the declaratory judgment sought by Patten is a judgment that it is not liable to Diamond for money damages. The non-declaratory

relief sought, alternatively, is money damages for Diamond's breach of contract.

Patten moved in the district court for an order compelling Diamond to discontinue the NASD arbitration. In support of this motion Patten urged: (1) that Diamond is not a public customer within the meaning of section 12(a) of the NASD Code of Arbitration Procedure, and thus could not compel arbitration; and (2) that even if Diamond is a public customer it waived the right to demand arbitration by agreeing in Section 14 of the Underwriting Agreement to a forum selection clause designating courts in New Jersey for suit. Diamond made a cross motion to dismiss the action for failure to state a claim upon which relief could be granted, or alternatively to stay the action pending the outcome of the arbitration proceeding. The district court entered the following order:

> It is on this 2nd day of September, 1986 ORDERED that plaintiff's motion to compel defendant to discontinue the arbitration proceeding be and the same is hereby DENIED; and it is further
>
> ORDERED, that defendant's cross motion to dismiss is denied; and it is further
>
> ORDERED that the within action be and the same is hereby administratively terminated, pending the result of an arbitration proceeding involving the same parties now pending before the National Association of Securities Dealers in Denver, Colorado, bearing Arbitration No. 86–191; and it is further
>
> ORDERED that this matter may be reinstated upon motion by either party for good cause shown.

Patten appeals from the quoted order.

## II.

The parties agree that we have appellate jurisdiction, both under 28 U.S.C. § 1291 (1982) and under 28 U.S.C. § 1292(a) (1982). Their agreement, however, does not relieve us of the responsibility of an independent determination of appealability.

■ We do not agree that the quoted order can be treated as a final judgment. While the action is "administratively terminated," it may be reinstated upon motion by either party for good cause shown. The district court expressly denied Diamond's motion to dismiss. While it is not clear what course the case will take upon the completion of the pending arbitration, the order clearly contemplates the possibility of further proceedings. One possible course, if Diamond should be unsuccessful in the arbitration, would be further proceedings with respect to Patten's claim for money damages for nondelivery of certificates. Thus we must reject the parties' shared contention that the order is final rather than interlocutory.

■ Nor do we agree that the order denying Patten's motion to compel Diamond to discontinue arbitration is reviewable under section 1292(a)(1).[1] The rule recognized in many circuits is that "an order staying an arbitration pending trial is an injunction, thereby making its grant or denial subject to interlocutory appeal." *Federal Civil Appellate Jurisdiction: An Interlocutory Restatement*, 47 Law & Contemp.Probs. 13, 129–130 (1984). *See, e.g., Buffler v. Electronic Computer Programming Institute, Inc.*, 466 F.2d 694, 696–99 (6th Cir.1972); *Power Replacements, Inc. v. Air Preheater Co.*, 426 F.2d 980 (9th Cir.1970). In this court, however, we have held that the denial of a motion to stay an arbitration proceeding is not appealable under section 1292(a)(1) as the denial of an injunction. *Stateside Machinery Co. Ltd. v. Alperin*, 526 F.2d 480, 482–83 (3d Cir. 1975). *See also Mellon Bank, N.A. v. Pritchard-Keang Nam Corp.*, 651 F.2d 1244, 1250 (8th Cir.1981); *New England Power Co. v. Asiatic Petroleum Corp.*, 456

---

**1.** Certainly, had the district court denied a motion to dismiss the complaint pursuant to a forum selection clause, this court's jurisdiction to review the order would be clear. *See Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 193–97 (3d Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983) denial of a motion to dismiss an action in order to give effect to a forum selection clause is appealable on three grounds: as an interlocutory decision under 28 U.S.C. § 1292(a)(2) (1982), as a collaterally final order under 28 U.S.C. § 1291 (1982) and under the All Writs Act, 28 U.S.C. § 1651 (1982).

F.2d 183, 185–87 (1st Cir.1972); *Greater Continental Corp. v. Schechter,* 422 F.2d 1100, 1102 (2d Cir.1970). We reasoned in *Stateside Machinery v. Alperin* that because the question of arbitrability could be reconsidered when an effort was made to enforce the award, the harm from the denial of a motion to stay arbitration was unlikely to be irreparable. While the *Stateside* rule may be another illustration of the needless complexity which has been created with respect to federal interlocutory appellate review, this panel is bound by it.

■ What is left, therefore, is the order "administratively terminating" Patten's action for declaratory relief and damages. This amounts to a stay of the action pending arbitration. Such an order requires consideration of the metaphysical *Enelow-Ettelson* doctrine.[2] As this court recently noted, under the *Enelow-Ettelson* rule:

> [A]n order by which a court grants or denies a stay of its own proceedings in an action at law pending the resolution of an equitable defense or counterclaim is analogized to an order enjoining or refusing to enjoin proceedings in another suit, hearkening back to the days before the merger of law and equity. Since an order granting or denying an injunction is appealable under 28 U.S.C. § 1292(a)(1), so too is an *Enelow-Ettelson* order.

*Cost Bros., Inc. v. Travelers Indemn. Co.,* 760 F.2d 58, 59–60 n. 1 (3d Cir.1985). As we noted in *H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffeurs and Helpers Local Union No. 384,* 755 F.2d 324, 327 (3d Cir. 1985), an agreement to arbitrate a legal dispute is considered an equitable defense. Thus Patten's obligation to arbitrate, if it exists by virtue of Patten's membership in NASD, qualifies as an equitable defense for Diamond.

■ The remaining question is whether Patten's action is one at law. To the extent that the complaint pleads, even alternatively, a claim of damages for failure to deliver certificates pursuant to the underwriting agreement, it pleads an action at law. Actions for declaratory judgments are generally considered neither equitable nor legal, for declaratory relief can be given in either type of action. Thus, for *Enelow-Ettelson* purposes, one treatise indicates that "they must be converted into one or the other by looking to the kind of action, legal or equitable, that would ultimately have been brought had Congress not provided the declaratory judgment remedy." 9 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 110.20[3], at 243. *See also American Safety Equip. Corp. v. J.P. Maguire & Co.,* 391 F.2d 821 (2d Cir.1968).

The relationship between the *Enelow-Ettelson* doctrine and the stay of an action which seeks declaratory judgment, for purposes of pursuing an arbitration proceeding, is discussed with clarity in *Hartford Financial Systems v. Florida Software Serv., Inc.,* 712 F.2d 724 (1st Cir.1983). In *Hartford,* appellants appealed from an arbitration order issued by a district court in a contract dispute between a partnership and the Depositors Trust Company. The original partners of the partnership were Hartford and Martin. The partnership contracted with Depositors to supply data processing services. Subsequent to the signing of the agreement, the partnership was reorganized to include Florida Computer Services (FCS). Eventually, Hartford and Martin transferred over 99 percent of the partnership to FCS. When the partnership sent Depositors invoices for additional expenses, Depositors claimed the partnership was in breach of the contract, and refused to pay the invoices. Depositors contracted for substitute data processing services, and requested arbitration to resolve the contract dispute between the partnership and Depositors. Hartford and Martin refused to agree to arbitration, and then sued Depositors to prevent it from obtaining substitute performance, and FCS to force it to perform the terms of the contract with Depositors. At Depositor's request, the district court, acting under the authority of the Federal Arbitration Act, stayed the suit

---

**2.** *See Ettelson v. Metropolitan Life Ins. Co.,* 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942); *Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935).

and ordered the parties to arbitrate their breach of contract and related damages disputes. Hartford and Martin appealed, contending that although the contract allowed the district court to send the partnership to arbitration, it did not permit sending the individual partners to arbitration as well.

The court of appeals refused to reach that issue, holding that it lacked jurisdiction to consider the appeal. After discussing the historical roots of the law/equity distinction in the *Enelow-Ettelson* doctrine, 712 F.2d at 726, the court held that the underlying claim in the dispute was equitable. *Id.*, at 727. The court reasoned:

The plaintiffs in this case initially asked for injunctions prohibiting Depositors from seeking computer services elsewhere and requiring FCS to provide Depositors with those services. The plaintiffs also sought declaratory judgment—a chameleon-like statutory remedy which is neither "legal" nor "equitable." *See, e.g., American Safety Equipment Corp. v. J.P. Maquire & Co.,* 391 F.2d 821, 824 (2d Cir.1968); *Hargrove v. American Century Insurance Co.,* 125 F.2d 225, 228 (10th Cir.1942); *Pacific Indemnity Co. v. McDonald,* 107 F.2d 446, 448 (9th Cir.1939); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2769 (1983). Some courts have tried to characterize a suit for declaratory judgment as legal or equitable by asking about the nature of the suit that "would have been brought" were declaratory relief not available. *See, e.g., Diematic Manufacturing Corp. v. Packaging Industries, Inc.,* 516 F.2d 975, 978 (2d Cir.), *cert. denied,* 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975); *Wallace v. Norman Industries, Inc.,* 467 F.2d 824, 827 (5th Cir.1972); *American Safety Equipment Corp. v. J.P. Maquire & Co.,* 391 F.2d at 824. But we shall not. Rather, we shall assume, for the sake of argument, that the declaratory judgment claim in this case is "legal;" it raises damage-oriented contract questions. Regardless, the injunctive claims in the complaint are plainly equitable ... and their presence means

that we must consider this suit to be equitable for *Enelow-Ettelson* purposes. *See, e.g., USM Corp. v. GKN Fasteners, Ltd.,* 574 F.2d 17, at 21–22 (1978); 16C C. Wright, A. Miller, E. Cooper & E. Greesman, *Federal Practice and Procedure* § 3923 (1977).

*Id.*

■ Even if Patten's complaint did not seek damages for breach of contract, its claim for a declaratory judgment satisfies the "at law" prong of the *Enelow-Ettelson* test. As pleaded, the declaratory judgment claim raises only "damages oriented" contract questions. The complaint does not, as did the complaint in *Hartford,* seek injunctive/equitable relief. Other than the declaratory relief, damages are all the relief that properly could be afforded on the complaint. Thus the action is predominantly legal in nature, and the order granting the stay is appealable under section 1292(a)(1). *See H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffeurs and Helpers Local Union No. 384,* 755 F.2d at 327–28.

### III.

We turn, therefore, to the merits of Patten's appeal from the order staying its action pending arbitration. The district court held that Diamond is a public customer within the meaning of the NASD arbitration rule and that it has not waived its right to arbitration in the forum selection clause of the underwriting agreement. We address these issues separately.

### A.

Patten, as a member of the NASD, has agreed to:

abide by, comply with, and adhere to, all the provisions, conditions, and covenants of the ... By-laws, the rules and regulations of the [NASD] as they are or may from time to time be adopted, changed or amended, and all rulings, orders, directions and decisions of ... the Board of Governors or any duly authorized committee.

*NASD By-Laws,* Art. III, Sec. 1(a)(1). The NASD Board of Governors has adopted a

Code of Arbitration procedure that provides for submission to arbitration of "any dispute, claim, or controversy arising out of or in connection with the business of any member ... between or among members and public customers or others." *NASD Code of Arbitration Procedure*, Part I, Sec. 1, ¶ 3701, *reprinted in* NASD Manual (CCH) 3711. The NASD Code of Arbitration procedure also provides that any dispute "shall be arbitrated under this Code, as provided for by any duly executed and enforceable written agreement *or* upon the demand of a customer." *NASD Code of Arbitration Procedure*, Part III, Sec. 12(a), ¶ 3712, *reprinted in* NASD Manual (CCH) 3713-3 (emphasis supplied). The arbitration clause is disjunctive. It is therefore clear that if Diamond, a proposed issuer of shares, is a public customer it can demand NASD arbitration of its disputes with Patten by virtue of § 12(a), and Patten is compelled by its NASD membership to submit even absent a specific contractual arbitration undertaking directly with Diamond.

■ By agreeing to be bound by "all rulings, orders, directions, and decisions of ... any duly authorized committee," Patten is necessarily bound by the rulings, orders, directions and decisions of the NASD's National Arbitration Committee, which is without question a duly authorized committee of the NASD. *NASD Code of Arbitration Procedure*, Part I, Sec. 2, ¶ 3702, *reprinted in* NASD Manual (CCH) 3716. The National Arbitration committee is empowered to establish rules, regulations, and procedures for arbitration matters. *Id.* During its 1983 annual meeting the National Arbitration Committee issued the following interpretative statement:

An issuer of securities should be considered a public customer of a member firm where a dispute arises over a proposed underwriting.

Joint Appendix at 149.

Thus, the National Arbitration Committee, a duly authorized committee, has concluded that issuers of securities, like Diamond, are public customers that are enti-

tled to demand arbitration under § 12(a) of the Code of Arbitration Procedure.

Patten contends that while it did agree to be bound by the rulings, orders, directions, and decisions of the Board of Governors and any duly authorized committee it did not agree to be bound by any interpretative statement of the Board of Governors or any duly authorized committee. This contention is without merit, however, because the issuance of an interpretative statement is a legitimate exercise of the NASD's rule making authority. *See Harwell v. Growth Programs, Inc.*, 315 F.Supp. 1184, 1188-9 (W.D.Tex.1970), *rev'd on other grounds*, 451 F.2d 240 (5th Cir.1971), *modified on other grounds*, 459 F.2d 461 (5th Cir.), *cert. denied*, 409 U.S. 876, 93 S.Ct. 126, 34 L.Ed.2d 129 (1972).

■ The National Arbitration Committee's interpretative statement can be set aside if it is considered to be arbitrary or subjective. *Moses v. Burgin*, 445 F.2d 369, 382 (1st Cir.), *cert. denied*, 404 U.S. 994, 92 S.Ct. 532, 30 L.Ed.2d 547 (1971). However, such a determination would not be warranted here. When the NASD defined public customer in the *NASD Rules of Fair Practice*, it only limited the term so as to not exclude brokers and dealers. *NASD Rules of Fair Practice*, Art. II, Sec. 1(F), ¶ 2101, *reprinted in* NASD Manual (CCH) 2013. Interpreting the term to include issuers is certainly not arbitrary nor subjective, but rather consistent with the *NASD Rules of Fair Practice*.

Since interpretative statements of the National Arbitration Committee are final, conclusive, and binding upon NASD members, Diamond, an issuer of securities, is a public customer entitled to demand NASD arbitration, and absent a waiver Patten must submit to Diamond's arbitration demand.

### B.

■ Since it is not disputed that the underwriting agreement involves interstate commerce, arbitrability of the dispute is governed by 9 U.S.C. § 2 (1982). Therefore, whether a forum selection clause is a waiver of NASD arbitration is to be deter-

mined by reference to federal law. *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 43 (3d Cir. 1978); *Acevedo Maldonado v. PPG Industries, Inc.*, 514 F.2d 614, 616 (1st Cir.1975).

██ "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). A forum selection clause, on the other hand, does not enjoy such federal favor. In fact, a forum selection clause "should be unenforceable if enforcement would contravene a strong public policy of the forum in which the suit is brought." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1971). Thus the forum selection clause must be scrutinized carefully, and if doubts arise as to whether this dispute is arbitrable or not, such doubts must be resolved in favor of arbitrability. *See Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39 (3d Cir.1978).

 Conspicuously absent from the forum selection clause in the underwriting agreement is any reference to arbitration whatsoever.[3] When Patten drafted the forum selection clause it could have made a reference to arbitration in the clause if it sought to have Diamond waive NASD arbitration by signing the Underwriting Agreement. A party signing a waiver must know what rights it is waiving. *See Royal Air Properties, Inc. v. Smith*, 333 F.2d 568 (9th Cir.1964). By agreeing to submit to the jurisdiction of the State and Federal Courts of New Jersey, Diamond knew it was waiving its right to attack the maintenance of personal jurisdiction over it by the

New Jersey courts or to resort to courts elsewhere. It cannot be said that Diamond also knew that it was waiving its right to the contractual remedy of arbitration, since any reference thereto is absent. The clause is therefore at least ambiguous. It makes no reference to NASD arbitration and merely states the agreement of both parties to accept the maintenance of personal jurisdiction by New Jersey courts should Patten bring suit there to settle a controversy arising under the agreement.

Furthermore there is nothing inconsistent between the arbitration obligation and the instant forum selection clause. Both can be given effect, for arbitration awards are not self enforceable. They may only be enforced by subsequent judicial action. Thus, even if arbitration is completed, the forum selection clause would appear to dictate the location of any action to enforce the award.

## IV.

This court has appellate jurisdiction to review the order staying Patten's action pending arbitration. Patten is bound by the NASD arbitration clause and Diamond is a public customer beneficiary of the clause. The forum selection clause in the underwriting agreement does not waive Diamond's right to demand arbitration. The order staying Patten's action pending arbitration will therefore be affirmed.

---

**3.** The forum selection clause reads:

This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of New Jersey, and the Company hereby consents and will submit to the jurisdiction of the courts of the State of New Jersey and of any federal court sitting in the State of New Jersey with respect to controversies arising under this Agreement. Joint Appendix at 144.