GELDERMANN, INC., *et al.*, Petitioners-Appellants, v. JAMES STATHIS *et al.*, Respondents-Appellees.

First District (2nd Division)   No. 1—88—1752

Opinion filed December 13, 1988.

J. Timothy Eaton and Robert A. Chapman, both of Coffield, Ungaretti, Harris & Slavin, and Gloria Matthews, of Geldermann, Inc., both of Chicago, for appellants.

Michael B. Roche and Jeffrey B. Lieberman, both of Schuyler, Roche & Zwirner, of Chicago, for appellees.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

This appeal emanates from a circuit court order denying a petition to stay arbitration.

Petitioner Geldermann Securities, Inc. (GSI), a Delaware corporation with its principal place of business in Chicago, Illinois, is involved in the business of clearing market makers, providing clearing and floor brokerage services, and other activities in connection with the purchase and sale of equity stock options and index options traded on the Chicago Board Options Exchange (CBOE). Petitioner Geldermann, Inc. (Geldermann), an Illinois corporation with its principal place of business in Chicago, owns all the capital stock of GSI and directly or indirectly controls most of GSI's operations.

Respondents James Stathis and John Martorello are the owners and officers of GRK-JNO Investments, Inc., an Illinois corporation, which provides floor brokerage services at the CBOE, with which it is a registered member firm.

In the spring of 1986, Geldermann and Stathis began negotiations which culminated in a written agreement dated December 24, 1986 (the December Agreement), wherein Stathis agreed to manage certain "Profit Centers" for GSI, involving floor brokerage and clearing services at the CBOE. Geldermann formed GSI for the purpose of implementing the provisions of the December Agreement.

The December Agreement contains 22 paragraphs, two of which are relevant to this case. Paragraph 14 provides:

> "14. *Compliance.* Both parties agree to comply with all Exchange Rules, Securities and Exchange Commission Rules, and applicable state and federal law."

Paragraph 22 provides:

> "22. *Relevant Law.* This Agreement shall be construed and enforced in accordance with the laws of the State of Illinois. The parties agree that venue for any action hereunder shall lie ex-

clusively with any State of [sic] Federal Court of competent jurisdiction situated in Cook County, Illinois."

On June 24, 1987, Geldermann and GSI entered into a one-page memorandum agreement with Stathis and Martorello for the operation of a new "profit center" of GSI, involving public customer business at the CBOE. A dispute developed between the parties regarding each other's performance under the terms of the December Agreement. On January 12, 1988, Stathis notified Geldermann and GSI by letter that he would terminate the December Agreement for cause if respondents did not cure certain alleged breaches within 30 days.

Ten days later, Geldermann and GSI terminated three employees working for one of the "profit centers" under Stathis' direction. In response, Stathis filed a verified complaint for injunctive relief and a motion for a temporary restraining order in the circuit court on January 25, 1988. Petitions for a preliminary injunction and a temporary restraining order were denied. The complaint was voluntarily dismissed by Stathis on March 10, 1988.

On February 17, 1988, Geldermann and GSI filed a three-count complaint against Stathis in the law division of Cook County, alleging his breach of the December Agreement and seeking money damages.

Six days later, Stathis and Martorello invoked CBOE Rule 18.1(a) governing arbitration and filed a statement of claim against Geldermann and GSI with the CBOE as required by that rule. CBOE Rule 18.1(a) provides:

"Any dispute, claim or controversy, arising between parties who are members or persons associated with a member which arises out of the Exchange business of such parties shall, at the request of any such party and the approval of the Exchange's Director of Arbitration, be submitted for arbitration in accordance with these rules."

On April 7, 1988, Geldermann and GSI filed an emergency motion in the law division case seeking a stay of arbitration, which was denied for lack of jurisdiction.

Pursuant to section 2(b) of the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1987, ch. 10, pars. 102(b), 115), on April 19, 1988, Geldermann and GSI filed their verified petition for a stay of arbitration. After oral argument on May 16, 1988, the circuit court denied the petition for a stay of arbitration. On June 13, 1988, Geldermann and GSI filed their notice of appeal.

Geldermann and GSI contend that paragraph 22 of the December Agreement unambiguously requires the parties to resolve any disputes exclusively in a court of law, and thus precludes the submission

of any claims to the CBOE for arbitration. They argue, therefore, the December Agreement does not provide for arbitration, and pursuant to Illinois law, the arbitration proceeding must be stayed. They claim that the circuit court erred in: (1) finding an agreement to arbitrate between the parties; (2) determining that paragraph 22 of the December Agreement was not a contractual waiver of the respondents' rights to seek arbitration; and (3) denying the petition to stay arbitration.

## I

The petitioners contend that the circuit court erred in finding an agreement to arbitrate between the parties, which led the circuit court improperly to rule that the Federal Arbitration Act (9 U.S.C. §1 *et seq.* (1982)) (FAA) governed the agreement. They argue that since there was no agreement to arbitrate, the FAA does not apply to the December Agreement, and further, section 2(b) of the Illinois Uniform Arbitration Act, which would then apply, mandates a stay of arbitration.

The Federal Arbitration Act (9 U.S.C. §2 (1982)) provides:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction *** shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

This section makes enforceable all arbitration agreements concerning transactions relating to interstate commerce. (*Coenen v. R.W. Pressprich & Co.* (2d Cir. 1972), 453 F.2d 1209, 1211.) Consequently, the FAA governs any arbitration agreement contained in a contract evidencing a transaction involving commerce. *Zell v. Jacoby-Bender, Inc.* (7th Cir. 1976), 542 F.2d 34, 37.

The present parties have signed two agreements involving securities and options on these securities, which constitute transactions relating to commerce for the purpose of the Arbitration Act. (*Coenen*, 453 F.2d at 1211; *Cullen v. Paine, Webber, Jackson & Curtis, Inc.* (N.D. Ga. 1984), 587 F. Supp. 1520, 1522.) Whether the FAA applies to the December Agreement, therefore, depends upon whether there was any agreement to arbitrate.

Rules of a stock exchange constitute a contract between all members of the exchange; the arbitration provisions embodied in the rules have contractual validity. (*Coenen*, 453 F.2d at 1211.) Just as the constitution and rules of the New York Stock Exchange have been held

to create a binding agreement to arbitrate between members (*Cullen*, 587 F. Supp. at 1523), so must we regard the CBOE rules in the instant case. The *Cullen* court found "not dispositive that there was no express agreement to arbitrate made directly by plaintiff and *** [defendant] as each was no doubt aware of the binding effect of the Exchange's Constitution and Rules providing for arbitration." (*Cullen*, 587 F. Supp. at 1523.) Also in point is *John Olagues Trading Co. v. First Options of Chicago, Inc.* (N.D. Ill. 1984), 588 F. Supp 1194, which considered Chicago Board of Options Exchange Rule 18.1(a). In *Olagues*, the court held that because the parties, as members, agreed to be bound by the rules of the CBOE, Rule 18.1(a) was a contract between them providing for arbitration. 588 F. Supp. at 1199.

There is no dispute in the present case that the parties are members of or closely associated with the CBOE. As the circuit court properly found, they have agreed as a matter of law to be bound by the rules of the CBOE, which includes Rule 18.1(a), providing the right to request arbitration.

■ Further, the existence of an agreement to arbitrate based on Rule 18.1(a) is bolstered by reference to the December Agreement. Paragraph 14 of the agreement clearly states that "[b]oth parties agree to comply with *all* Exchange Rules." (Emphasis added.) Nothing in that clause excludes Rule 18.1(a), or any other CBOE rule. Therefore, even if membership in the CBOE did not, as a matter of law, provide the agreement to arbitrate under Rule 18.1(a), this paragraph in the December Agreement explicitly adopts the arbitration provisions of the CBOE rules.

Since the parties have an agreement to arbitrate, and the subject matter of the agreements between the parties clearly involves interstate commerce, the circuit court correctly held that the FAA governs the December Agreement.

## II

Geldermann and GSI next contend that even if there was an obligation to arbitrate, the parties to the December Agreement "opted out of" or waived their Federal rights to arbitrate under Rule 18.1(a). They assert that language contained in paragraph 22 of the December Agreement, namely that "venue for any action hereunder shall lie exclusively with any State [or] Federal Court of competent jurisdiction" in Cook County, is an enforceable forum selection clause that unambiguously requires the parties to litigate their disputes in court, and "by definition," not before an arbitration panel.

■ A party to a contract may waive the right to insist on compli-

ance with an arbitration clause. (*Howard Hill, Inc. v. George A. Fuller Co.* (5th Cir. 1973), 473 F.2d 217, 218.) For example, the rules of the National Association of Securities Dealers (NASD), upon which petitioners rely, provide for arbitration; however, if both parties to a private contract make alternative arrangements for the resolution of their dispute, those rules do not apply, and arbitration is therefore not mandatory. (*Creative Securities Corp. v. Bear Stearns & Co.* (S.D.N.Y. 1987), 671 F. Supp. 961, 966 n.8, *aff'd* (2d Cir. 1988), 847 F.2d 834.) Petitioners correctly assert that arbitration is a "waivable contract right"; however, as will be presently seen, a waiver of that right will not be lightly inferred. *Dickinson v. Heinold Securities, Inc.* (7th Cir. 1981), 661 F.2d 638, 641.

■ Does paragraph 22 of the December Agreement constitute a waiver of the Rule 18.1(a) right to arbitrate? Because the FAA governs the agreement, whether the paragraph 22 forum selection clause is a waiver of CBOE arbitration must be determined by reference to Federal law. (*Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc.* (3d Cir. 1987), 819 F.2d 400, 406-07; *Becker Autoradio USA, Inc. v. Becker Autoradiowerk GmbH* (3d Cir. 1978), 585 F.2d 39, 43.) The FAA creates a body of Federal substantive law, applicable to any arbitration agreement within FAA coverage. (*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* (1983), 460 U.S. 1, 24, 74 L. Ed. 2d 765, 785, 103 S. Ct. 927, 941.) Under the FAA, Federal law applies to all questions of interpretation, construction, validity, revocability and enforceability of arbitration agreements. *Lippus v. Dahlgren Manufacturing Co.* (E.D.N.Y. 1986), 644 F. Supp. 1473, 1482.

The FAA establishes that, as a matter of Federal law, any doubts concerning the scope of arbitration should be resolved in favor of arbitration, whether the problem is the construction of the contract language itself or an allegation of waiver. (*Moses H. Cone Hospital*, 460 U.S. at 24-25, 74 L. Ed. 2d at 785, 103 S. Ct. at 941.) There is a strong presumption in favor of arbitration. (*Mitsubishi Heavy Industries, Ltd. v. George J. Meyer Manufacturing Division* (N.D. Ill. 1981), 517 F. Supp. 652, 654.) A forum selection clause, on the other hand, is unenforceable where enforcement would contravene a strong public policy. (*Boyd v. Grand Trunk Western R.R. Co.* (1949), 338 U.S. 263, 94 L. Ed. 55, 70 S. Ct. 26. See *The Bremen v. Zapata Off-Shore Co.* (1972), 407 U.S. 1, 15, 32 L. Ed. 2d 513, 523, 92 S. Ct. 1907, 1916.) Forum selection clauses must be scrutinized carefully. Doubts which may arise as to whether a dispute is arbitrable or not must be resolved in favor of arbitration. *Patten Securities*, 819 F.2d at 407.

With these principles as frames of reference, *Patten Securities* is directly in point, contrary to petitioners' arguments. In that case, the Third Circuit was asked to interpret a forum selection clause in an underwriting agreement to determine whether it was a waiver of the right to arbitration. (819 F.2d at 405.) The *Patten Securities* court noted the conspicuous absence in the forum selection clause of any reference to arbitration (819 F.2d at 407), stating:

> "It cannot be said that [appellee] also knew that it was waiving its right to the contractual remedy of arbitration, since any reference thereto is absent. The clause is therefore at least ambiguous."

The Third Circuit held that there was no waiver of the right to arbitration in such an ambiguous clause. 819 F.2d at 407.

■ Similarly in this case, paragraph 22, entitled "Relevant Law," makes no reference to arbitration. As in *Patten Securities*, the clause is ambiguous at the least. Considering the presumption of arbitrability when a forum selection clause is ambiguous, plus the strong Federal policy in favor of arbitration, the circuit court correctly held that the clause was not a right to arbitration waiver.

Petitioners further insist that paragraph 22 unambiguously waives arbitration proceedings because the use of the phrase "venue for *any* action hereunder shall lie *exclusively* with the State [or] Federal Court of competent jurisdiction situated in Cook County, Illinois," made it unnecessary to use the word "arbitration." This argument is without merit. First, paragraph 14 adopted *all* rules of the CBOE, including the right to arbitration in Rule 18.1(a). If the parties intended to waive only that right, it should have been stated expressly in the agreement. Second, as noted by the circuit court, paragraph 22 can be read solely as a waiver of the *"right to challenge"* personal jurisdiction or venue in the State and Federal courts situated in Cook County, with the word "exclusively" referring only to venue. As the court observed in *Patten Securities*, any doubts in such clauses must be resolved in favor of arbitrability. 819 F.2d at 407. See also *Cullen v. Paine, Webber*, 587 F. Supp. at 1524.

■ Finally, there is no irreconcilable inconsistency between paragraph 22 and Rule 18.1(a). Both can be given effect, since arbitration awards are not self-enforceable. Once arbitration is completed, therefore, the forum selection clause reasonably can be interpreted as dictating the *location* of any action that might be necessary after arbitration in order to enforce the award. (*Patten Securities*, 819 F.2d at 407.) Paragraph 22 did not constitute an "opting out" or waiver of the right to arbitration.

■ Pursuant to their membership in the CBOE, and their explicit adoption of all Exchange Rules in paragraph 14 of the December Agreement, the instant parties agreed to arbitrate their disputes when requested by one or both of them, which was not waived in paragraph 22, the forum selection clause.

Since there was a valid agreement to arbitrate, there was no basis under section 2(b) of the Illinois Uniform Arbitration Act for the circuit court to grant a stay of arbitration proceedings, and it correctly denied petitioners' request for a stay of arbitration. For the foregoing reasons, the decision of the circuit court must be affirmed.

Affirmed.

BILANDIC and EGAN, JJ., concur.