# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Gilmore v. Carey*, 2011 IL App (1st) 103840

---

| | |
|---|---|
| Appellate Court Caption | CHRISTOPHER GILMORE, Plaintiff-Appellee, v. CHARLES CAREY, JOSEPH NICIFORO, and HENNING-CAREY PROPRIETARY TRADING, LLC, Defendants-Appellants. |
| District & No. | First District, Third Division<br>Docket No. 1–10–3840 |
| Filed | June 29, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for unpaid wages and damages for the breach of the terms of an employment agreement, the trial court properly denied defendants' motion to stay the proceedings and compel arbitration, notwithstanding defendants' contention that plaintiff owned an interest in one defendant, a trading company that was a member of the Chicago Board of Trade, and that plaintiff was subject to the rules of the Chicago Board of Trade, including Rule 600, which requires arbitration of member disputes, since plaintiff's claims were not directly exchange-related and fell outside the mandatory arbitration provisions of the Board's rules. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10–L–8708; the Hon. Jennifer Duncan-Brice, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Peter B. Carey, Katherine T. Hartmann, and Hanh D. Meyers, all of Carey & Hartmann LLC, of Chicago, for appellants.

Michael A. Ficaro, Dean J. Polales, Kristopher J. Stark, and Richard H. Tilgman, all of Ungaretti & Harris LLP, of Chicago, for appellee.

Panel

JUSTICE MURPHY delivered the judgment of the court, with opinion.

Presiding Justice Quinn and Justice Steele concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Christopher Gilmore, filed a five-count complaint against defendants, Henning-Carey Proprietary Trading, LLC (Henning-Carey), Charles Carey and Joseph Niciforo, seeking unpaid wages and damages for breach of the terms of an employment agreement between the parties. On December 21, 2010, the trial court denied defendants' motion to dismiss count I for unpaid wages and to stay proceedings and compel arbitration of counts II through V of plaintiff's complaint. Defendants only appeal the trial court's order denying their motion to stay proceedings and compel arbitration. Defendants argue that because plaintiff owns a Class B interest in Henning-Carey, a member of the Chicago Board of Trade (CBOT), plaintiff is subject to and obligated by all CBOT rules. Defendants argue that Rule 600, which requires arbitration of member disputes, is applicable to this case and the trial court erred in denying the motion to stay proceedings and compel arbitration. For the following reasons, we affirm the holding of the trial court.

¶ 2                                    I. BACKGROUND

¶ 3    On October 22, 2009, plaintiff entered into a "Services Agreement" with Henning-Carey to work as a "business development manager, product developer for trading, trader, and manager" on a salaried, one-year term. Plaintiff was to perform the functions of managing the business development of Henning-Carey's trading operations on GOVX, which involved the trading of United States Treasury securities. Plaintiff also was to manage a separate proprietary trading group for which Henning-Carey would provide liquidity.

¶ 4    Plaintiff reported directly to defendants Niciforo and Carey. Plaintiff was guaranteed a W-2 salary of $15,000 per month for managing the GOVX business and could earn a quarterly bonus at defendants' discretion. Henning-Carey also contracted to offer plaintiff "in the near future" a right to buy a "B Share" interest in the corporation. Plaintiff paid $250,000 for that membership and was entitled to demand return of this capital contribution

upon withdrawal from Henning-Carey.

¶ 5 Plaintiff worked through the end of February 2010 for Henning-Carey. Plaintiff did not work on the trading floor and averred that he was not a member of the Chicago Mercantile Exchange Group, Inc., CBOT or any other exchange. Plaintiff received his paychecks as contracted through February 12, 2010. The paychecks were issued by Twinfields Capital Management, an entity affiliated with Henning-Carey, and it was not a CBOT member. Plaintiff stopped working after February 2010 and did not receive any additional monthly paychecks or a return of his capital contribution.

¶ 6 On July 29, 2010, plaintiff filed his multicount complaint. The first count, not at issue here, asserted a violation of the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.* (West 2008)) for defendants' failure to pay plaintiff his contracted salary. Counts II through V are at issue on this appeal and involved claims for: breach of the Services Agreement based on the failure to pay plaintiff's guaranteed salary and provide benefits; breach of Henning-Carey's operating agreement (Operating Agreement) for failing to return plaintiff's capital contribution; breach of fiduciary duty based on misappropriation of plaintiff's capital contribution, failing to provide proper support for plaintiff's operations, and creating a negative work environment to force plaintiff to leave; and conversion for the failure to return plaintiff's capital contribution. Defendants moved to dismiss count I and to stay the proceedings and compel arbitration of counts II through V. Defendants noted that, as plaintiff alleged in his complaint, he was a "Class B" member of Henning-Carey. Defendants cited section 2.6 of the Operating Agreement to argue that arbitration was mandatory per CBOT Rules. Section 2.6 states in full:

> "In cases where a Class B Member trades the company's proprietary account at [CBOT], and where the non-member trader's profit or loss allocation is tied to the profitability of the specific proprietary accounts(s) [*sic*], in order for the trades in such proprietary account to receive member fee treatment, each such Class B Member must make an initial capital contribution of $200,000 and must maintain at least $200,000 in the trading account(s) and the $200,000 must be available to support the trading activity on the Exchange and comply with all Rules and Regulations of [CBOT], including Rule 244.05. In the event that Rule 244.05 is changed such that the amounts required are increased, the amounts set forth in this paragraph 2.6 are also increased. Class A and Class B Members shall be responsible for the full amount of any losses sustained by him."

¶ 7 Defendants argued that this necessarily includes CBOT Rule 600, which states, in pertinent part:

> "It is contrary to the objectives and policy of the Exchange for members to litigate certain Exchange-related disputes. Disputes between and among members that are described below and that are based upon facts and circumstances that occurred at a time when the parties were members shall be subject to mandatory arbitration in accordance with the rules of this Chapter:
>
>> 1. Claims between members that related to or arise out of any transaction on or subject to the rules of the Exchange; and

2. Claims between or among members relating to ownership of, or interests in, trading rights on the Exchange; and

3. Claims between members relating to the enforceability of:

a. non-compete clauses to the extent they relate to the Exchange,

b. terms of employment on the trading floor, and

c. financial arrangements relating to the resolution of error trades that are included in any employment agreement.

Nothing in this rule, however, shall require a member employee to submit to arbitration any claim that includes allegations of a violation of federal, state or local employment discrimination, wage payment or benefits laws."

¶ 8 Defendants argued that the language of Rule 600 was clear and there could be no doubt that the arbitration provision applied to counts II through V of plaintiff's complaint. Defendants asserted that each of plaintiff's claims not only related to the parties' ownership or interest in Exchange trading rights, they were predicated on purported violations of those rights. Defendants concluded that since all claims related to trading business, member trading rights were necessarily implicated and the claims were subject to the mandatory arbitration provision in Rule 600.

¶ 9 The motion was fully briefed and the trial court issued an order denying defendants' motion without a hearing. The trial court disagreed with plaintiff that he was not a member of CBOT because he was a Class B member of a member firm, thereby a member and subject to all CBOT rules and regulations. However, quoting the rule, the trial court opined that plaintiff's claims did not " 'relate to or arise out of any transaction on or subject to the rules of the Exchange.' " The trial court highlighted that plaintiff's count II was a claim for breach of an employment contract and the remaining counts involved claims that plaintiff was entitled to return of his capital contribution pursuant to the Operating Agreement.

¶ 10 In addition, the trial court cited to section 10.14 of the Operating Agreement, which provides:

"10.14 *Dispute Resolution*. Except as otherwise specifically provided in this Agreement, any controversy or claim arising out of or relating to this Agreement, its interpretation, enforcement or breach, and any matter relating to the business for which this limited liability company was formed shall be determined by the federal or state court in Chicago, Cook County, Illinois."

¶ 11 Since counts II through V were premised upon plaintiff's allegation that defendants misappropriated his capital contribution in violation of the Operating Agreement, the trial court found that section 10.14 applied. Accordingly, the trial court concluded that Rule 600 did not apply and the action properly lay in the circuit court of Cook County. The trial court denied defendants' motion to stay proceedings and compel arbitration. Defendants appeal that order.

¶ 12 II. ANALYSIS

¶ 13 The trial court based its decision on its interpretation of Rule 600, the Services

Agreement, and the Operating Agreement. The construction, interpretation and legal effect of a contract are questions of law. *Geldermann, Inc. v. Mullins*, 171 Ill. App. 3d 255, 259 (1988). We consider a ruling interpreting such agreements *de novo*. *Casablanca Trax, Inc. v. Trax Records, Inc.*, 383 Ill. App. 3d 183, 187 (2008). Defendants add that, because arbitration is viewed favorably by the courts as an easier, more efficient and cost-effective means for resolving disputes than litigation, the scope of arbitrable issues ought to be resolved in favor of arbitration. *Heiden v. Galva Foundry Co.*, 223 Ill. App. 3d 163, 168 (1991).

¶ 14    Defendants argue that plaintiff's claims that he was not a CBOT member are an attempt to avoid case law cited by defendants and must fail. We agree on this point. As alleged in his complaint, plaintiff held a Class B membership in Henning-Carey, a proprietary trading corporation with, according to its operating agreement, a CBOT membership. While plaintiff is correct that defendants did not provide evidence on this issue, we agree with the trial court that this argument fails by plaintiff's exhibits and own allegation that he was a member of CBOT. However, we also agree with the trial court that, though the parties are subject to CBOT rules, plaintiff's claims fall outside the mandatory arbitration provision and are distinguishable from the limited case law on this issue.

¶ 15    Defendants cite to *Mullins* and *Geldermann, Inc. v. Stathis*, 177 Ill. App. 3d 414, 419 (1988), to argue that the trial court erred in finding plaintiff's claims outside the scope of CBOT activities and the arbitration clause. In *Mullins*, the plaintiff, a commodities broker and CBOT member, filed a cause of action against the defendants for misappropriating personal property. The plaintiff argued that the defendants revised a computer trading program developed for and owned by the plaintiff for their own gain. The trial court denied the defendants' motion to stay the litigation and compel arbitration. *Mullins*, 171 Ill. App. 3d at 256. This court reversed the trial court's order, finding that the great majority of business upon which the plaintiff's claims were based fell within the scope of CBOT Rule 600. *Id.* at 261.

¶ 16    The *Mullins* trial court cited the evidence that approximately 90% of trades generated from the computer programs at issue were executed on the CBOT. Therefore, the trial court found that the claims arose from both Exchange-related and non-Exchange-related activities and the controversy did not fall squarely within Rule 600. This court, however, noted that a prior ruling discussing this issue held that Rule 600 fell between a broad arbitration clause and a limited arbitration clause and it merely required that business must stem from Exchange-related activity, " 'but does not necessarily have to specifically be trading on the Exchange.' " *Id.* at 259-60 (quoting *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 151 Ill. App. 3d 597, 605 (1987)). Accordingly, this court concluded the trial court erred in requiring 100% Exchange-related activity to stay litigation and compel arbitration. *Id.* at 261.

¶ 17    In *Stathis*, which the trial court in the instant matter discusses extensively in its order, the defendants entered into an agreement with the plaintiff to manage profit centers involving floor brokerage and clearing services at the Chicago Board Options Exchange (CBOE). *Stathis*, 177 Ill. App. 3d at 416. The agreement included language that the parties agreed to comply with all CBOE rules as well as a venue provision. Following a dispute over each parties' performance, the defendants were terminated. One of the defendants filed a

-5-

complaint for injunctive relief and motion for temporary restraining order. After the defendant's complaint was voluntarily dismissed, the plaintiff followed with its own cause of action alleging breach of their agreement. *Id.* at 416.

¶ 18    The trial court denied a stay of arbitration after the defendants invoked the CBOE rule on arbitration. This court affirmed, noting that "[r]ules of a stock exchange constitute a contract between all members of the exchange; the arbitration provisions embodied in the rules have contractual validity." *Id.* at 418. This court rejected the plaintiff's argument that the venue provision of their agreement could overcome the arbitration provisions of their agreement and the CBOE rules. The court also noted the parties' activities involved interstate commerce and the Federal Arbitration Act provided further support for compelling arbitration. *Id.* at 419.

¶ 19    Defendants contend that *Stathis* requires following Rule 600 based on plaintiff's allegations concerning his and the parties' CBOT memberships. They argue that the trial court's citation to the venue provision of the Operating Agreement to bolster its opinion was in error under *Stathis*. They continue to argue that, as stated under *Mullins*, Rule 600 must be followed if the actions complained of stem from Exchange-related business. Defendants contend that plaintiff's claims concerning defendants' actions and use of plaintiff's capital contribution are clearly Exchange-related and conclude that arbitration is required.

¶ 20    While defendants decry the trial court's failure to examine the facts and allegations of this case under each subsection of Rule 600, we conduct our review *de novo* and agree with plaintiff that the trial court properly determined that this matter falls outside of the scope of Rule 600. We agree with defendants that *Stathis* and *Mullins* require following CBOT rules for disputes between members on Exchange-related matters. However, both of these cases involved disputes concerning activities that were directly Exchange-related.

¶ 21    The United States District Court for the Northern District of Illinois examined Rule 600 and *Mullins* and noted that Rule 600 "does not compel arbitration of all inter-member disputes but rather is limited to controversies that 'arise[ ] out of the Exchange business of' the member parties." *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1367 (N.D. Ill. 1990). *Zechman* involved a retaliatory discharge claim arising from the plaintiff's discharge from employment in retaliation for his objections to certain trading practices by the defendant in violation of CBOT's rules. *Id.* at 1368. While the court stated that a broad view of the "arising under" language of the rule would be appropriate under the holding in *Mullins* and the lack of available authority to support a narrow view of the rule, the court noted that the plaintiff's claim rested on the propriety of the trading practices of the defendant–business directly related to the Exchange. Accordingly, it held that the claim at issue was less attenuated than that in *Mullins* and it found arbitration was required by the Rule. *Id.* at 1369.

¶ 22    This case involves a dispute over the terms of the employment contract and defendants' withholding of funds allegedly owed plaintiff. Unlike *Zechman*, the subject matter is not directly Exchange-related, but is more attenuated than that in *Mullins* and *Stathis*. Therefore, we consider the provisions of Rule 600 and whether plaintiff's employment claims are arbitrable issues.

¶ 23    The trial court affirmatively discussed the first subsection of Rule 600 and properly concluded that plaintiff's claims did not "relate to or arise out of any transaction on or subject to the rules of the Exchange." Plaintiff's claims are based on breach of an employment contract and not related to or arising out of an Exchange transaction. Accordingly, this subsection does not compel arbitration. Likewise, with respect to subsection 3 of Rule 600, plaintiff's claims do not relate to the enforceability of noncompete clauses, terms of employment on the trading floor, or financial arrangements relating to the resolution of error trades. Therefore, under subsection 3 of Rule 600 and this subsection does not compel arbitration in this case.

¶ 24    As noted by defendants, the trial court did not specifically discuss the provision of subsection 2 of Rule 600, but, while closer on the facts, this provision does not compel arbitration of plaintiff's claims. Plaintiff's claims are centered on the payment of his contracted wages and the return of his capital contribution per the agreements between the parties. Plaintiff does not raise allegations concerning ownership of, or interests in trading rights. As the trial court concluded, plaintiff seeks damages for defendants' alleged failure to comply with the terms of his employment contract and to return his funds. Unlike *Stathis* and *Mullins*, plaintiff's complaint does not have a direct relation to Exchange activity. Therefore, the considerations supporting arbitration do not mandate arbitration in this matter.

¶ 25    Accordingly, as concluded by the trial court, because the Operating Agreement and Services Agreement do not specifically require arbitration for such non-Exchange-related activities as employment issues, arbitration is not required. We also agree with plaintiff's position that the dispute-resolution section of defendant's Operating Agreement, which, as previously elucidated in this opinion, contains specific provisions for venue, supports the conclusion that plaintiff's breach of contract claims be resolved in a state or federal court in Cook County, Illinois. Therefore, the trial court's denial of defendant's motion to compel arbitration and stay proceedings is affirmed. This matter is remanded for further proceedings.

¶ 26                                    III. CONCLUSION
¶ 27    For the aforementioned reasons, the decision of the trial court is affirmed.
¶ 28    Affirmed.