Michael VASSALLO, Plaintiff,

v.

HABER ELECTRIC CO., a Delaware
Corporation, Defendant.

Superior Court of Delaware,
New Castle County.

Submitted April 8, 1981.

Decided June 2, 1981.

Robert K. Pearce (argued), Wilmington, for plaintiff.

John J. Thompson (argued), Wilmington, for defendant.

## CIVIL ACTION

O'HARA, Judge.

Plaintiff's complaint alleges that defendant underpaid him during 1977 and 1978, when plaintiff worked as an electrician on jobs which defendant had contracted to perform for the State of Delaware. Plaintiff claims the failure of defendant to register plaintiff in a bona fide apprenticeship program entitled him to be paid the higher wages of a journeyman. Defendant has moved for summary judgment; plaintiff has moved for partial summary judgment.

Defendant, admitting it employed plaintiff as alleged, and did not register him as an apprentice, bases its motion upon several grounds: 1) defendant was not required to register plaintiff as an apprentice pursuant to 29 *Del.C.* § 6912 and 19 *Del.C.*, Ch. 2; 2) defendant has been released from any claim for unpaid wages; 3) 10 *Del.C.* § 8111 bars any claim for wages accruing prior to April 10, 1978; and 4) plaintiff lacks standing to bring an action under 29 *Del.C.* § 6912.

Plaintiff premises his motion upon the grounds that 1) 29 *Del.C.* § 6912, and regulations promulgated thereunder, mandate the registration of plaintiff in a bona fide apprenticeship program; 2) the action was filed within the statutory limitation period set forth in 10 *Del.C.* § 8106; and 3) plaintiff disclaimed the release by returning the consideration and claims the release was induced by duress.

The Court disagrees with all of defendant's contentions, agrees with all of plaintiff's contentions, except the last, and concludes, as to that position, that it presents matter in conflict which must be resolved by the jury.

19 *Del.C.*, Ch. 2,[1] having to do with the establishment of a State apprenticeship sys-

---

1. § 201. Declaration of policy.
It is declared to be the policy of this State to:
(1) Encourage the development of an apprenticeship and training system through the voluntary cooperation of management and labor and interested state agencies and in cooperation with other states and the federal government;
(2) Provide for the establishment and furtherance of standards of apprenticeship and training to safeguard the welfare of apprentices and trainees;
(3) Aid in providing maximum opportunities for unemployed and employed persons to improve and modernize their work skills;
(4) Contribute to a healthy economy by aiding in the development and maintenance of a skilled labor force sufficient in numbers and quality to meet the expanding needs of industry and to attract new industry.
§ 202. Powers and duties of Department.
(a) The Department shall carry out the purposes of this chapter and its duties and powers shall include, but shall not be limited to:
(1) Establishing standards for apprenticeship in conformity with this chapter and applicable statutes and regulations of the federal government;
(2) Adopting such rules and regulations as may be necessary to carry out the intent and purpose of this chapter;
(3) Compiling such data on population and employment trends, industrial production, vocational and industrial education and job requirements as may be deemed necessary to carry out the intent and purpose of this chapter;
(4) Studying the effectiveness of apprenticeship programs and making recommendations in accordance with such programs for their improvement and to terminate, cancel or modify any apprenticeship programs in accordance with such programs;
(5) Maintaining close liaison with the Bureau of Apprenticeship and Training, the United States Department of Labor and such other

tem, and 29 *Del.C.* § 6912,[2] having to do with prevailing wage rate provisions in pub-

lic construction contracts, in specific language did not require the registration of

agencies which carry on programs closely related to the purposes of this chapter;

(6) Conducting studies, surveys and investigations of the special problems of retraining or training unemployed or employed persons to improve or modernize work skills and make appropriate recommendations to cooperating agencies described above, local community organizations and local school boards;

(7) Acting as a convening agency in local communities to bring together local representatives of employee organizations, employers, educational agencies and industrial development agencies in order to promote closer local cooperation in establishing better apprenticeship and other training programs including programs for employed persons who wish to improve and modernize their work skills;

(8) Encouragement and promotion of the standards established in accordance with this chapter and with the basic standards of the Bureau of Apprenticeship and Training, United States Department of Labor;

(9) Bringing about the settlement of differences arising out of apprenticeship programs and agreements when the differences cannot be adjusted locally or in accordance with established trade procedure;

(10) Supervision of the execution of agreements and the maintenance of standards;

(11) Registration of apprenticeship programs and agreements;

(12) Keeping a record of apprenticeship agreements and programs and, upon performance thereunder, issuing certificates of completion of apprenticeship;

(13) Encouragement of liaison and cooperation between all private, state and federal agencies concerned with apprenticeship, trade and industrial training;

(14) Promotion of public awareness of apprenticeship and other occupational training;

(15) Keeping a record of the progress of apprenticeship and training programs initiated in accordance with this chapter; and

(16) Performing such other duties as may be necessary to give full effect to this chapter.

(b) No action affecting the status of a program shall be taken by the Department of Labor until an attempt has been made to bring the employees and employer together to settle the problem in conformity with the standards of the Department of Labor.

§ 203. Limitations.

This chapter shall apply only to persons, copartnerships, associations, corporations, political subdivisions, employer associations and organizations or associations of employees as voluntarily elect to conform with its provisions.

2. § 6912. Wage provisions in public construction contracts; failure to pay prevailing wage rates; penalty.

(a) The specifications for every contract in excess of $2,000 to which this State or any subdi-

vision thereof is a party and for which the State appropriated any part of the funds for construction, alteration and/or repair, including painting and decorating of public buildings or public works located within the geographical limits of this State and which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Department of Labor and Industrial Relations of this State to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the construction work in the city, town, village or other civil subdivision of the State in which the work is to be performed. Determination of the prevailing wage rates shall be based on the average of the actual wages paid to a majority of the employees employed in the type construction work involved and performing the work in the county for which a prevailing wage is being determined. Every contract based upon these specifications shall contain a stipulation that the contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work, unconditionally and not less often than once a week and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at wage rates not less than those stated in the specifications, regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics, and that the scale of wages to be paid shall be posted by the contractor in a prominent and easily accessible place at the site of the work, and a further stipulation that there may be withheld from the contractor so much of accrued payments as may be considered necessary by the contracting officer to pay to laborers and mechanics employed by the contractor or any subcontractor on the work the difference between the rates of wages required by the contractor to be paid laborers and mechanics on the work and rates of wages received by such laborers and mechanics and not refunded to the contractor, subcontractor or their agents.

(b) The Department of Labor shall investigate all claims that the prevailing wage rates as provided for under this section are not being or have not been paid. Upon his finding that a contractor or subcontractor has not paid or is not paying the prevailing wage rates, the Secretary of Labor shall notify the contractor or subcontractor thereof and make an effort to obtain compliance. Upon failure to obtain compliance, the Secretary of Labor shall notify the contractor or subcontractor by registered mail that the said contractor or subcontractor

plaintiff in a bona fide apprenticeship program. However, the Department of Labor of the State of Delaware ("Department") promulgated certain regulations, in effect in 1977 and 1978, in connection with apprentices employed on state contracts pursuant to 19 *Del.C.*, Ch. 2 and 29 *Del.C.* § 6912. According to Regulation 2.2, an apprentice may work as an apprentice under particular state contracts "only when they are registered individually under a bona fide apprenticeship program with the Department." Effective April, 1, 1979, the regulation was amended stating that the wage rate to be paid to an unregistered apprentice, shall be the rate determined by the Secretary of Labor for the classification of work he actually performed.

Regulation 2.2, in effect in 1977 and 1978 stated:

"(a) Apprentices will be permitted to work as such on State contracts in excess of $2,000 only when they are registered individually under a bona fide apprenticeship program registered with the Department.

"(b) The prevailing wage rate for registered apprentices shall be the percentage of the laborers' or mechanics' rate as

determined for this region by the United States Department of Labor."

Regulation 2.2, as amended, requires:

"(a) Apprentices will be permitted to work as such on State contracts in excess of $2,000 only when they are registered with the State Department of Labor, Apprenticeship and Training Section.

"(b) The Journeyman's rate on all State contracts is that rate determined by the State Prevailing Wage Survey and the percentage of that journeyman's rate that the registered apprentice receives will be the percentage that the registered apprentice qualifies for under the terms of the individual's existing Apprenticeship Agreement.

"(c) Any employee listed on the payroll at an apprentice wage rate, who is not registered as above, shall be paid the wage rate determined by the Secretary of Labor for the classification of work he actually performed."

Plaintiff submitted the affidavit of Karen Peterson, former supervisor of the Labor Law Enforcement Section of the Department. According to the affidavit the Department, in 1977 and 1978, interpreted the

---

has violated this section. If the contractor or subcontractor does not comply within 15 days of receipt of said registered mail, the Secretary may terminate all rights of the contractor or subcontractor to proceed with the work under the public construction contract, and the contractor or subcontractor shall be responsible for all damages resulting therefrom.

(c) Any contractor or subcontractor who willfully fails or refuses to pay the prevailing wage rates provided for under this section shall for each such failure or refusal, upon conviction thereof, be fined not less than $500 nor more than $2,000 and upon such conviction no public construction contract in this State shall be awarded to or received by such contractor or subcontractor, or to any person, firm, partnership or corporation in which such contractor or subcontractor has an interest, until 3 years have elapsed from the date of such conviction. The Superior Court shall have exclusive jurisdiction of offenses under this section.

(d) Any laborer or mechanic employed by any contractor or subcontractor who is paid in a sum less than the prevailing wage rates provided for under this section shall have a right of action against the contractor or subcontractor

in the Superior Court to recover the difference between the amount so paid and the prevailing wage rate plus interest at 6 percent per annum. Such action shall, at the request of the laborer or mechanic, be brought by the Department of Justice acting for the Department of Labor in the name and for the benefit of the laborer or mechanic. It shall not be a defense to such action that the underpayment was received by the laborer or mechanic without protest, either oral or in writing, against the amount thereof, and the lack or failure of protest shall not be a bar to recovery. In the event that there is a wilful failure or refusal by the contractor or subcontractor to pay the prevailing wage rate, the contractor or subcontractor shall pay treble the difference between the amount so paid and the prevailing wage rate and shall pay, in addition, a reasonable attorney's fee in an amount to be set by the Superior Court for services rendered in that Court and on any appeal. Upon the filing of an action under this section, the contractor or subcontractor shall post suitable bond approved by the Superior Court for the damages which may be recoverable hereunder. The party bringing an action under this section shall not be required to pay court costs.

regulation to mean that an apprentice not registered in a bona fide apprenticeship program could not be considered an apprentice and, therefore, could not be paid at an apprentice's rate of pay, but was entitled to receive journeyman's wages; that the purpose of the amended Regulation 2.2 in 1979 was to clarify the intent of the regulation in effect in 1977 and 1978, but not to change the effect of the previous regulation.

 An administrative agency's construction of regulations enacted by it and statutes it administers are given great weight by the courts, provided said construction is not clearly erroneous. The courts, however, ultimately determine the true interpretation or construction of a particular statute or regulation. 2 Am.Jur.2d *Administrative Law* §§ 306, 307.

 The affidavit here is an interpretation of the Department of Regulation 2.2 expressed, not by a mere employee, but by the Superintendent of Enforcement. No contradiction appearing, it can be taken as Department interpretation. The Department's interpretation is not inconsistent with 19 *Del.C.*, Ch. 2 which simply sets forth the State's policy to encourage the development of an apprenticeship system through the voluntary cooperation of management, labor, and interested state agencies. This policy does not prohibit the mandatory registration of apprentices. Nor is the interpretation of the regulation contrary to 29 *Del.C.* § 6912 which provides, inter alia, for the payment of wages to various classes of laborers and mechanics as determined by the Department.

The Department's interpretation coincides with the Court's conclusion that a fair reading of 19 *Del.C.*, Ch. 2 and 29 *Del.C.* § 6912 and Regulation 2.2, both before and after the 1979 amendment, required the registration of plaintiff.

With respect to defendant's contention that plaintiff has released all claims here asserted, the record reflects that on August 18, 1978, plaintiff signed a document in favor of defendant releasing it from "any

and all claims for unpaid wages from the beginning of time to the date hereof." Plaintiff received $50.00 in consideration for the execution of the release. Approximately ten days thereafter, plaintiff returned the $50.00 check.

 Plaintiff claims defendant's agent contacted him prior to the execution of the release and made various threats amounting to economic duress. Whether or not "duress" existed is in dispute, thus presenting a material issue of fact regarding the validity of the release which must be resolved by the trier of fact. In determining whether duress has been . practiced in obtaining a release where there is no physical force used or threat of physical injury, the general test which applies is whether or not any unlawful threats found to have occurred destroyed the victim's free will and compelled him to comply with a demand for the release. 66 Am.Jur.2d *Release* § 26.

The plaintiff argues additionally, however, that the release should be considered as having been disclaimed as a matter of law relying largely on the decision in *Bingham v. Airport Limousine Service*, W.D. Ark., 314 F.Supp. 565 (1970), involving an action for unpaid compensation under the Fair Labor Standards Act. In that case the Court, in an apparently somewhat similar factual setting to the instant case, concluded that the purpose of the Act involved would, in and of itself, be nullified if employers were permitted to diminish their liability through obtaining, by persuasion, a release from an employee for unpaid wages in consideration of a sum less than that provided by law.

In examining this principle, this Court is unpersuaded that the purpose of the Act, here involved, is sufficiently compelling to defeat a release otherwise knowingly and intelligently entered into. In other words, the Court is not convinced by the rationale of the *Bingham* case that a basic concept of the law relating to the validity of releases should be thus brushed aside.

The Court is of the opinion, that, in this instance, the release involved, and its validity, remains an issue of fact to be determined by the trier of fact.

■ Turning to the statute of limitations issue raised by defendant, we find that 10 *Del.C.* § 8111 bars an action for recovery, upon a claim for wages, if that action is brought after the expiration of one year from the accruing of the cause of action. However, turning to 10 *Del.C.* § 8106, relied upon by plaintiff as controlling, we find that an action based upon a statute must be commenced within three years from the accruing of the cause of action.

10 *Del.C.* § 8111 applies to claims arising out of services performed. *Goldman v. Braunstein's, Inc.,* Del.Supr., 240 A.2d 577 (1968); *Wilmington Housing Auth. v. Rocky Marciano Const. Co.,* D.Del., 407 F.Supp. 228 (1976). However, although plaintiff's claim here is for unpaid "wages", these wages were not due and owing as a result of services performed by the plaintiff. Plaintiff is entitled to the higher wage of a journeyman as a consequence of defendant's failure to register plaintiff as an apprentice. This remedy unequivocally derives from statute.

Nevertheless, defendant argues, 10 *Del.C.* § 8111 is so comprehensive in scope that it applies not only to claims for wages, but also indemnification and disability and, thus, should apply to plaintiff's cause of action. Claims for indemnification and disability, however, are benefits arising from work, labor, or personal services performed. *Mitchell v. E. I. duPont deNemours & Co.,* Del.Supr., 310 A.2d 641 (1973); *Sorensen v. The Overland Corporation,* D.Del., 142 F.Supp. 354 (1956); aff'd 3rd Cir., 242 F.2d 70 (1957). Here, plaintiff is not entitled to journeyman's wages as benefits for the work he performed, but rather is entitled to journeyman's wages because of the employer's non-compliance with the statute.

■ In any event, the nature of the cause of action determines the applicable statute. If a substantial doubt exists as to which is the applicable statutory period, the longer, rather than the shorter, period of limitations is to be preferred. 51 Am.Jur.2d *Limitation of Actions* § 63. The Court concludes, therefore, that the appropriate statute of limitations here is found in § 8106.

■ On the standing issue, the record reflects that on or about August 11, 1978, plaintiff contacted the Department of Justice to discuss the claim for lost wages. The Department of Justice initially agreed to file suit on behalf of plaintiff, but eventually decided against it. Plaintiff contends that 29 *Del.C.* § 6912(d) simply provides that a laborer or mechanic employed by a contractor or subcontractor shall have a right of action for unpaid wages and that such right, if requested, shall be brought by the Department of Justice acting for the Department on behalf of the laborer or mechanic. Defendant, on the contrary, argues that § 6912(d) only permits a suit for unpaid wages to be brought by the State.

Prior to the enactment of 29 *Del.C.* § 6912(d) in 1972, the employee was expressly given a cause of action for unpaid wages, pursuant to 29 *Del.C.* § 6912 (formerly § 6913). *Callaway v. N.B. Downing Co.,* Del.Super., 172 A.2d 260 (1961). It is inconceivable that the Legislature by subsequently enacting subsection (d) intended to expressly authorize an action for unpaid wages and yet prohibit the employee from making the ultimate decision as to whether or not to pursue a remedy. Thus, plaintiff, in the Court's opinion, has standing to bring an action in his own name, pursuant to 29 *Del.C.* § 6912, in the event that, as here, the Department of Justice refuses to bring the action.

In light of the foregoing analysis and conclusions, plaintiff's motion is granted with respect to the issues of the interpretation of 29 *Del.C.* § 6912 and regulations promulgated thereunder, the applicable statute of limitations and standing; plaintiff's motion with respect to the validity of the release, however, is denied as it presents conflicting matter which must be resolved by the jury; defendant's motion is denied as to all contentions.

IT IS SO ORDERED.

Plaintiff also claims, via the amended complaint, that defendant violated 40 U.S.C. § 276 and the regulations promulgated thereunder in failing to register plaintiff

as an apprentice for work performed pursuant to contracts between the United States and defendant. Plaintiff, however, has now effectively abandoned this position and any separately asserted claim for additional damages.