**AMERICAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Carlos D. PARRA; Asiat, S.A.; and The Parkway Corporation, Defendants.**

**No. CIV. A. 98–401–RRM.**

United States District Court,
D. Delaware.

Oct. 29, 1998.

Lawrence C. Ashby, Stephen E. Jenkins, Regina A. Iorii, Ashby & Geddes, Wilmington, DE, Stuart A. Krause, Zeichner, Ellman

& Krause, New York City, Michael T. Sullivan, Marc A. Lebowitz, Piliero Goldstein Jenkins & Hall, New York City, for Plaintiff.

Norman L. Pernick, Michael F. Bonkowski, Mark Minuti, Esquire, Saul, Ewing, Remick & Saul, Wilmington, DE, Hector Torres, Harold G. Levison, Marc D. Youngelson, Kasowitz, Benson, Torres & Friedman LLP, New York City, for Defendants.

## AMENDED OPINION

MCKELVIE, District Judge.

This is a commercial dispute. Plaintiff American Life Insurance Company ("ALICO"), is a Delaware corporation. Defendants Carlos D. Parra, ASIAT, S.A. and Parkway Corporation, are former ALICO agents. Parra is a citizen of the Republic of Argentina. ASIAT and Parkway are corporations organized under the laws of the Republic of Uruguay.

In a complaint filed on July 9, 1998, as amended on July 20, 1998, ALICO alleges the defendants have instituted a proceeding to arbitrate certain claims, including claims relating to an October, 1994 General Release Agreement entered into between plaintiff and defendants. ALICO contends it has no obligation to arbitrate those claims. It seeks a declaration that the issues relating to the agreement are non-abitrable and an order enjoining the defendants from proceeding with the arbitration.

ALICO has moved for a temporary restraining order and preliminary injunction. This is the court's decision on the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The court draws the following facts from the pleadings and papers the parties have submitted in connection with ALICO's motion.

### A. Relationship of the Parties

From 1977 to 1987, Parra operated under an oral agreement with Delaware American Life Insurance Company, a wholly owned subsidiary of ALICO. According to defendants, Parra agreed to sell ALICO's International Dollar Business policies in Argentina and collect the premiums for the Company, and the Company agreed to pay Parra commissions on the premiums. In 1987, Parra contracted directly with ALICO to sell International Dollar Business policies.

In November, 1990, Parra and ALICO entered into a Master General Agent's Agreement. Pursuant to the agreement, ALICO appointed ASIAT, represented by Parra, master general agent. ASIAT agreed to sell, and contract with agents and brokers to sell, International Dollar Business policies. ASIAT agreed to supervise the agents and brokers and to pay operating expenses. ALICO agreed to pay ASIAT commissions and bonuses for premiums collected according to schedules set out in the agreement. The parties agreed ASIAT was an independent contractor, and agreed either party could terminate the agreement without cause upon ninety days written notice.

In a January 23, 1991 letter, ALICO's president, Richard R. Collins informed Parra that ALICO had increased ASIAT's productivity bonus because ASIAT was the "Number One" master general agency for International Dollar Business policies. Defendants allege by this time Parra had created and supervised an agency network of approximately 350 agents and brokers.

On November 1, 1991, Parra and ALICO entered into a Supervising Master General Agent's Agreement, pursuant to which ALICO appointed Parra supervising master general agent. Parra agreed to sell, and to contract directly with agents and brokers to sell, International Dollar Business policies. Parra agreed to supervise the agents and brokers, and to pay all operating expenses. ALICO agreed to pay commissions and bonuses to Parra for active policies according to schedules set out in the agreement. ALICO agreed to pay Parra a productivity bonus based upon the first year premiums Parra and his agency network collected, and a persistency bonus based upon the renewal premiums they collected. Parra agreed his interest in commissions and bonuses for a policy would cease upon the policy's termination.

The parties agreed Parra was an independent contractor, and agreed either party could terminate the agreement without cause upon ninety days written notice. ALICO agreed to pay Parra any commissions or bonuses on policies remaining in force if it terminated the agreement without cause. The parties agreed to settle "[a]ny controversy or claim arising out of or relating to this Agreement" by binding arbitration. In the case of arbitration, the parties agreed each party would appoint one arbitrator; the two arbitrators would then select a neutral party, which they call an umpire. The parties agreed to choose a mutually amenable location for any arbitration. The agreement states arbitrators "are not to be bound by any strict rules of legal procedure or evidence."

Defendants allege that in 1992, Parra and his agency network produced more than $5 million in International Dollar Business premiums. Defendants allege, during this year, Alex Fernandez, the president of the Latin American Life Insurance Division of ALICO, told some of Parra's agents that ALICO planned to terminate International Dollar Business and to form a subsidiary to sell a new line of policies in Argentina. Defendants allege Fernandez intended to cause instability among Parra's agents, so the agents would contract directly with ALICO.

In an August 2, 1993 letter to Parra, J. Douglas Azar, ALICO's president and chief operations officer, terminated the Supervising Master General Agent's Agreement without cause. Azar explained that ALICO could no longer pay Parra the current persistency bonus and earn a profit, but that ALICO planned to offer Parra a new contract with a modified bonus schedule. Azar asserted ALICO would continue to pay Parra the current persistency bonus for his portfolio of active policies pursuant to the terms of the terminated agreement.

On October 1, 1994, ALICO, Parra and "ASIAT/Parkway" entered into a General Release Agreement. Defendants allege Parra signed the agreement relying on ALICO's statements at the time that it planned to terminate International Dollar Business by the end of 1994 and "that the October 1994

Document would only 'release' certain agents from the [International Dollar Business] business for that 2–month period." Defendants allege ALICO demanded Parra sign the agreement after he had only fifteen minutes to review it, and ALICO refused to translate the agreement into Spanish, Parra's native language, or to allow Parra to consult a lawyer. Defendants allege ALICO told Parra he would receive no money if he refused to sign.

Pursuant the agreement, Parra and "ASIAT/Parkway" agreed to release four of Parra's master general agents so they could contract directly with ALICO. Parra and "ASIAT/Parkway" agreed to release any claims to commissions or bonuses for policies sold by the four agents after October 1, 1994 and agreed to release all claims concerning the agents "arising out of and in anyway relating to" the Supervising Master General Agreement. In exchange, ALICO agreed to pay Parra and "ASIAT/Parkway" $127,292.30. The parties agreed "any interpretation or adjudication related to this Agreement shall occur in accordance with Delaware law in a court located in the State of Delaware, United States of America."

In 1994, ALICO Argentina, a newly-formed, wholly-owned subsidiary of ALICO, started selling a new line of policies in Argentina. Since then, defendants allege ALICO has actively solicited Parra's most successful agents to work for ALICO Argentina. Defendants allege ALICO has lured Parra's master general agents by paying them persistency bonuses which, defendants allege, came out of Parra's terminated persistency bonus.

Defendants allege since operating ALICO Argentina, ALICO has delivered inadequate service to Parra's International Dollar Business policyholders and has paid his agents' commissions late. Defendants allege ALICO induced Parra's former agents to convince Parra's policyholders to reissue their policies with ALICO Argentina, usurping Parra's persistency bonus. Defendants also allege ALICO did not terminate International Dollar Business in 1994 as it represented it would when Parra signed the General Release Agreement.

B. *Arbitration Proceeding*

The Inter–American Convention on International Commercial Arbitration was created in 1975 to enforce international commercial arbitrations in the Western Hemisphere. *See* Inter–American Convention on Int'l and Commercial Arbitration, Jan. 30, 1975, 14 I.L.M. 336, *available in* WESTLAW I.E.L. VIII–C. Argentina and Uruguay ratified the convention by May, 1995. *See* Inter–American Commercial Arbitration Comm'n, Rules of Procedure of the Inter–American Commercial Arbitration Comm'n (1988), *available in* WESTLAW I.E.L. VIII–E–4 [hereinafter IACAC, Rules of Procedure]. The United States ratified the convention on August 15, 1990, and adopted the convention's articles at Chapter 3 of the Federal Arbitration Act ("FAA"). 9 U.S.C. § 301 (Supp.1992) ("The Inter–American Convention on International Commercial Arbitration of January 30, 1975, shall be enforced in United States courts in accordance with this chapter.").

The Inter–American Commercial Arbitration Commission ("IACAC") "maintains, and administers throughout the Western Hemisphere a system for settlement, by arbitration or conciliation of international commercial disputes." IACAC, Rules of Procedure, at 3. The Inter–American Convention's Article 3 provides that IACAC's Rules of Procedure govern arbitrations under the convention if the parties have not expressly agreed otherwise. *See* Inter–American Convention on Int'l Commercial Arbitration, Art. 3 ("In the absence of an express agreement between the parties, the arbitration shall be conducted in accordance with the rules of procedure of the [IACAC].").

Article 3 of IACAC's rules lays out how a party to a dispute initiates arbitration under IACAC. Article 3 reads:

1. The party initiating recourse to arbitration . . . shall give the other party . . . a notice of arbitration.

2. Arbitral proceedings shall be deemed to commence on the date on which the notice of arbitration is received by the respondent.

3. The notice of arbitration shall include the following

(a) A demand that the dispute be referred to arbitration;

(b) The names and addresses of the parties;

(c) A reference to the arbitration clause or the separate arbitration agreement that is invoked;

(d) A reference to the contract out of or in relation to which the dispute arises;

(e) The general nature of the claim and an indication of the amount involved, if any;

(f) The relief or remedy sought;

(g) A proposal as to the number of arbitrators . . . if the parties have not previously agreed thereon. IACAC, Rules of Procedure, Art. 3.

On July 31, 1996, Parra and ASIAT served a Demand for Arbitration and Statement of Claim upon ALICO and IACAC, initiating an arbitration proceeding under IACAC pursuant to Article 3 of IACAC's rules. Parra and ASIAT served amended Statements of Claim upon ALICO and IACAC on September 12, 1996 and October 16, 1997. In the statements, Parra and ASIAT allege Parra and ALICO agreed to arbitrate disputes arising under the Supervising Master General Agent's Agreement. They allege ALICO breached this agreement and intentionally interfered with Parra's agency network and prospective business opportunities by terminating the agreement without cause. They allege ALICO breached oral agreements and fiduciary duties, and unjustly enriched itself by destroying Parra's agency network and by inducing ALICO Argentina to solicit his agents and brokers.

On November 25, 1996, Parra and ASIAT submitted a discovery request to ALICO seeking the production of records pertaining to the business activities of "members of the Parra organization."

In September, 1997, ALICO, Parra and ASIAT selected an arbitral panel pursuant to the Supervising Master General Agent's Agreement. ALICO designated James F. Jorden as an arbitrator and Parra and ASIAT designated Donald J. Zoeller as an arbitrator. It appears that the arbitrators selected Anthony M. Lanzone as umpire.

ALICO later replaced Jorden with Lawrence F. Harr.

On November 7, 1997, ALICO submitted its Statement of Defense to the arbitral panel. ALICO denies it breached the Supervising Master General Agent's Agreement or any oral agreements and denies it improperly interfered with or appropriated Parra's business opportunities or agency network. ALICO contends it acted in a commercially reasonable manner and in accordance with industry standards.

In a March 10, 1998 letter, ALICO informed Parra and ASIAT that ALICO would not produce any documents concerning the four master general agents listed in the General Release Agreement. ALICO asserts Parra and ASIAT gave up all claims related to these agents when they executed the General Release Agreement. It appears Parra and ASIAT then requested the arbitral panel consider the scope and validity of the General Release Agreement. It appears they allege ALICO fraudulently induced Parra's assent to the agreement as a part of a "scheme to defraud." On March 27, 1998, the panel heard oral argument on the request.

On April 3, 1998, the panel issued an order directing the parties to brief whether ALICO, Parra and ASIAT agreed to arbitrate disputes arising out of the General Release Agreement. The parties submitted briefs on May 1, 1998. Parra and ASIAT contend the ongoing arbitration encompasses ALICO's entire relationship with Parra and ASIAT, including disputes involving the General Release Agreement. ALICO contends the panel has no jurisdiction over the General Release Agreement because the parties did not agree to arbitrate disputes arising out of it.

On May 6, 1998, the panel sent a fascimile notice to the parties stating that the General Release Agreement's forum selection clause precludes the panel from arbitrating disputes arising out of the agreement, unless ALICO has waived its right to object to arbitration of such disputes. The panel requested the parties brief the waiver issue.

In a May 20, 1998 letter to the panel, Parra and ASIAT argue their Second Amended Statement of Claim gave ALICO notice they intended to arbitrate disputes involving the General Release Agreement because in it, they allege claims that ALICO destroyed Parra's "entire business." The "entire business," they argue, encompasses the entire network of agents, including the agents released in the General Release Agreement. Parra and ASIAT argue ALICO waived a lack of jurisdiction defense because it did not raise this defense in its Statement of Defense, as required by Article 21(3) of the IACAC's rules. IACAC, Rules of Procedure, Art. 21(3) (requiring "[a] plea that the arbitral tribunal does not have jurisdiction ... be raised not later than in the statement of defense.").

In a May 29, 1998 letter to the panel, ALICO argues the General Release Agreement is "[a] compensated release containing a *non*-arbitrability clause[,]" and therefore, disputes relating to it are not arbitrable. ALICO also argues it did not have notice Parra and ASIAT sought to arbitrate disputes involving the General Release Agreement because none of Parra and ASIAT's statements of claim expressly mention the agreement.

In a June 8, 1998 letter to the panel, Parra and ASIAT argue references to "members of the Parra organization" in their document request gave ALICO notice the arbitration proceeding encompassed claims related to all of Parra's agents, including the released agents. Consequently, they argue, ALICO had notice that the arbitration encompassed issues involving the General Release Agreement on November 25, 1996, almost a year before ALICO submitted its Statement of Defense on November 7, 1997.

In a June 29, 1998 order, the panel announced it would arbitrate issues related to the General Release Agreement because ALICO failed to raise timely objections to the panel's jurisdiction. The parties have since proceeded with discovery on the issue of the scope and validity of the General Release Agreement.

On July 27, 1998, Parra and ASIAT submitted a third amended Statement of Claim to the arbitral panel. In addition to their previous allegations, Parra and ASIAT allege ALICO fraudulently induced Parra to sign

the General Release Agreement in order to destroy his agency network. Parra and ASI-AT also added claims for damages arising from a heart attack Parra suffered in January 1997, which they claim was "a direct and proximate result of ALICO's tortious actions."

On July 9, 1998, ALICO filed this action seeking to enjoin Parra, ASIAT and Parkway from arbitrating disputes related to the General Release Agreement. At the same time, ALICO filed a motion for a temporary restraining order and preliminary injunction. On July 27, 1998, this court heard oral argument on the motion for temporary restraining order, which it declined to grant. The parties subsequently submitted briefing on the issue of this court's jurisdiction over the dispute.

On July 31, 1998 Parra, ASIAT and Parkway filed their answer. In their sixth affirmative defense, they allege ALICO fraudulently induced Parra to execute the General Release Agreement by misrepresenting that ALICO planned to eliminate International Dollar Business in a few months, and by misrepresenting that the agreement only released the four named master general agents for this time period. In their seventh affirmative defense, Parra, ASIAT and Parkway allege ALICO used duress and economic coercion to force Parra to execute the General Release Agreement.

On September 2, 1998, ALICO submitted a Supplemental Memorandum to this court contending claims related to Parra's heart attack lie outside the scope of the arbitration provision in the Supervising Master General Agent's Agreement. On September 15, this court heard oral argument on ALICO's motion for preliminary injunction. This is the courts decision on the preliminary injunction motion.

## II. *DISCUSSION*

The purpose of a preliminary injunction "is to preserve the status quo, not to decide the issues on their merits." *Anderson v.. Davila*, 125 F.3d 148, 156 (3d Cir.1997). When deciding a motion for a preliminary injunction, the court must evaluate the following four factors:

(1) the likelihood that the plaintiff will prevail on the merits at the final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest.

*New Jersey Hosp. Ass'n v. Waldman*, 73 F.3d 509, 512 (3d Cir.1995). The court shall issue an injunction "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *Id.*

A. *Can this court make arbitrability determinations in an arbitration under the Inter–American Convention?*

This court must first resolve if, as a threshold matter, it can decide whether the parties are bound to arbitrate disputes related to the General Release Agreement. Plaintiff contends the court, and not the arbitral panel, should decide whether disputes relating to the General Release Agreement are arbitrable because the parties did not agree the panel could determine the scope of its own jurisdiction. Defendants contend that under the Inter–American Convention, arbitrators, and not courts, decide whether disputes fall within the scope of the parties' agreement to arbitrate disputes.

■ The district courts of the United States have original jurisdiction over actions or proceedings falling under the Inter–American Convention regardless of the amount in controversy, pursuant to 9 U.S.C. § 203. *See* 9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.").

■ In actions to enforce arbitration proceedings in courts of law under Chapter 1 of the FAA, the Supreme Court has held courts decide whether a party is bound to arbitrate a matter, unless the parties have agreed to submit arbitrability disputes for arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514

U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *United Steelworkers of America v. Lukens Steel Co.*, 969 F.2d 1468, 1473–74 (3d Cir.1992). According to the Third Circuit, "whether or not [a party is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *PaineWebber Inc. v. Hofmann*, 984 F.2d 1372, 1376–77 (3d Cir.1993). This is because arbitration is a matter of agreement; parties are bound to arbitrate only what they have agreed to arbitrate. *See AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

■ According to the Supreme Court in *First Option of Chicago, Inc. v. Kaplan*, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc.*, 514 U.S. at 944, 115 S.Ct. 1920. If there is no clear and unmistakable evidence, a court of law should resolve disputes pertaining to agreements to arbitrate. *See id.*

Parra and ASIAT commenced arbitration pursuant to an arbitration clause in the Supervising General Master Agent's Agreement. This clause reads:

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint, in writing, one arbitrator and the arbitrators appointed shall select in writing an umpire. The arbitrators, without the umpire, shall arbitrate and their decision shall be final and binding on the parties hereto. In the event, however, of disagreement between the arbitrators, only the points of disagreement shall be submitted to the umpire. In such case, a decision of the umpire and one arbitrator shall be final and binding on the parties hereto. The arbitrators and the umpire are not to be bound by any strict rules of legal procedure or evidence. They shall decide in accordance with prevailing practices in the Company and with what they think is the fair and right thing to be done between the parties from a business

pont of view. The parties hereto will each pay for their own arbitrator and arbitration expenses and will share equally in the cost of the umpire. The parties shall elect, in writing, a mutually agreed location for the arbitration.

There is no provision in the Supervising Master General Agent's Agreement to submit arbitrability disputes for arbitration. Furthermore, the General Release Agreement contains no arbitration provision whatsoever. Because "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakabl[e]' evidence that they did so[,]" *id.*, this court finds the parties did not agree to submit arbitrability disputes for arbitration.

■ Defendants urge the court to distinguish international arbitration proceedings from domestic arbitration proceedings, because a strong presumption exists in favor of arbitrating, as opposed to litigating, disputes arising out of international commercial transactions. Defendants cite *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) to establish this presumption. Here the Supreme Court recognized a general presumption in favor of arbitrating disputes. *See Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 22 n. 27, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Court has held, however, this presumption goes the other way when courts decide whether they should resolve arbitrability disputes. *First Options of Chicago, Inc.*, 514 U.S. at 944, 115 S.Ct. 1920. Defendants have cited no cases which find a presumption in favor of granting international arbitral panels jurisdiction over disputes pertaining to the arbitrability of matters before the panel.

■ Defendants also urge the court to distinguish Inter–American Convention arbitration proceedings from domestic arbitration proceedings because the former are enforced under the FAA's chapter 3, while the latter are enforced under the FAA's chapter 1. The Inter–American Convention and IACAC recognize arbitration is a matter of agreement; parties are bound to arbitrate only what they

have agreed to arbitrate. *See AT & T Technologies, Inc.*, 475 U.S. at 649, 106 S.Ct. 1415. Article 1 of the Inter–American Convention states that the convention enforces agreements to arbitrate disputes relating to commercial transactions. *See* Inter–American Convention on Commercial Arbitration, Article 1. Article 1(1) of IACAC's rules limits its jurisdiction to "[w]here the parties to a contract have agreed in writing that disputes in relation to that contract shall be referred to arbitration under the IACAC Rules of Procedure ...." IACAC, Rules of Procedure, Article 1(1). According to Article 3(3)(c) of IACAC's rules, a party seeking to initiate arbitration must set out a reference to the arbitration clause or the separate arbitration agreement that is invoked. *Id.* at Article 3(3)(c). IACAC recommends parties who have not agreed in writing to submit disputes for arbitration do so before initiating arbitration under its rules. *Id.* at 2.

According to the Supreme Court, the rule "which follows inexorably" from the principle that arbitration is a matter of contract "is that the question of arbitrability ... is undeniably an issue for judicial determination." *AT & T Technologies, Inc.*, 475 U.S. at 649, 106 S.Ct. 1415. This court finds no reason to treat international arbitration proceedings differently from domestic arbitration proceedings in this respect. Therefore, this court finds equally applicable the principle that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649, 106 S.Ct. 1415.

Defendants present an argument over several steps that Article 21 of IACAC's rules, authorizing arbitrators to resolve arbitrability disputes, derogates the principle that courts determine whether parties agreed to arbitrate a matter. Defendants argue the Inter–American Convention's Article 3 incorporates IACAC's Rules of Procedure. *See* Inter–American Convention on Int'l Commercial Arbitration, Article 3 ("In the absence of an express agreement between the parties, the arbitration shall be conducted in accordance with the rules of procedure of [IACAC].") Pursuant to 9 U.S.C. § 307,

defendants argue, the convention's provisions supersede conflicting provisions of the FAA's chapter 1. 9 U.S.C. § 307 ("Chapter 1 [of the FAA] applies to actions and proceedings brought under this chapter to the extent chapter 1 is not in conflict with this chapter or the Inter–American Convention as ratified by the United States."). Because the convention incorporates IACAC's rules, defendants argue, IACAC's rules supersede conflicting provisions of the FAA's chapter 1. Defendants argue § 307 extends to principles of law recognized by courts enforcing arbitration proceedings under the FAA's chapter 1.

Article 21 of IACAC's rules vests arbitral panels with decision-making power over arbitrability disputes. IACAC, Rules of Procedure, Article 21(1) ("The arbitral tribunal shall have the power to rule on objections that it has no jurisdiction, including ... the existence or validity of the arbitration clause ...."). Defendants argue Article 21(1) is in conflict with case law holding that courts, not arbitrators, determine whether the parties agreed to submit disputes for arbitration. Defendants argue, therefore, Article 21(1) supersedes this case law and, accordingly, arbitrators should settle disputes concerning the arbitrability of matters before them.

As noted previously, principles recognized by the Supreme Court and the Third Circuit in actions to enforce arbitration proceedings under FAA's Chapter 1 apply with equal force to arbitration proceedings under the Inter–American Convention. Therefore, this court finds case law on arbitrability is not "in conflict" with the Inter–American Convention and, therefore, is not superseded.

Furthermore, Article 1(2) of IACAC's rules contains a self correcting measure that preserves conflicting principles of law that cannot be derogated. *See* IACAC, Rules of Procedure, Art. 1(2) (stating that the rules "shall govern except that where any of these Rules is in conflict with a provision of the law applicable to the arbitration from which these parties cannot derogate, that provision shall prevail.").

The Third Circuit instructs "a statute should not be considered in derogation of the common law unless it expressly so states or

the result is imperatively required from the nature of the enactment." *Bauers v. Heisel,* 361 F.2d 581, 587 (3d Cir.1966) (en banc); *see also Hernandez v. Kalinowski,* 146 F.3d 196, 200 (3d Cir.1998) ("Congress must clearly express its intent to change a well-established common law construction."). Nothing in the Articles of the Inter–American Convention leads this court to find IACAC's rules derogate conflicting common law principles. Accordingly, the principle that courts decide whether parties to a dispute are bound to submit to arbitration should "prevail" over Article 21(1) of IACAC's rules.

■ Defendants suggest that ALICO agreed to submit arbitrability disputes to the arbitral panel by participating in a proceeding governed by IACAC's rules. Defendants cite a commentator who notes that "international arbitration rules normally provide explicitly that the arbitrators have the power to determine their own jurisdiction," which falls into "the agreement of the parties exception of [*First Options of Chicago, Inc. v. Kaplan*]." Ian R. MacNeil *et al.,* IV *Federal Arbitration Law: Agreements, Awards And Remedies Under the Federal Arbitration Act* § 44.15.1 (Supp.1996). ALICO and Parra, however, did not expressly agree to arbitrate disputes according to IACAC's rules. This court, therefore, declines to adopt the suggestion that the parties agreed to submit arbitrability disputes to the arbitral panel by submitting to an arbitration proceeding governed by the IACAC's rules.

■ ALICO and Parra agreed to resolve any disputes arising under the General Release Agreement in a Delaware court. As a result, the arbitral panel never had jurisdiction over disputes arising under the General Release Agreement. Because the arbitral panel did not have jurisdiction over the agreement, it never should have reached the waiver issue. Because this court finds that the parties did not agree that the arbitral panel could determine its own jurisdiction, this court concludes it has jurisdiction to decide whether the parties agreed to arbitrate disputes arising under the General Release Agreement.

**B.** *Is ALICO likely to prevail on the merits?*

■ Having concluded the court has jurisdiction, the court now turns to the merits of ALICO's motion for preliminary injunction. A court determines whether parties to an arbitration proceeding are bound to submit a matter for arbitration independently of any previous decision by the arbitrators. *See First Options of Chicago, Inc.,* 514 U.S. at 943, 115 S.Ct. 1920 ("If ... the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide the question just as it would decide any other question that the parties did not submit to arbitration, namely independently.").

1. *Did the Parties agree to arbitrate disputes related to the General Release Agreement?*

■ According to the Supreme Court, "[w]hen deciding whether the parties agreed to arbitrate a certain matter ... courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944, 115 S.Ct. 1920. ALICO and Parra agreed Delaware law would apply to disputes arising under the General Release Agreement. Delaware law requires a court to read a contract as a whole and to give its provisions their ordinary meaning. *Citadel Holding Corp. v. Roven,* 603 A.2d 818, 822 (Del.1992). *See, e.g., Myers v. Myers,* 408 A.2d 279, 280 (Del.1979) ("In the absence of ambiguity, there is no room for interpretation or a search for the intent of the parties."). Courts should give the greatest weight to the express language of the contract itself. *See, e.g., United States v. Armour & Co.,* 402 U.S. 673, 678, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971).

In the General Release Agreement, Parra and ALICO agreed "any interpretation or adjudication" of the agreement would take place in a Delaware court. This clause clearly expresses the parties' intent to resolve all disputes arising under the General Release Agreement in a Delaware court, which precludes arbitrating disputes. Consequently, this court finds that the parties did not agree

to arbitrate disputes arising under the General Release Agreement.

Defendants argue the Third Circuit has held that previously granted arbitration rights can be waived only by express language. *Patten Securities Corp., Inc. v. Diamond Greyhound & Genetics, Inc.,* 819 F.2d 400 (3d Cir.1987). The General Release Agreement contains no express arbitration waiver. Defendants argue, under *Patten Securities,* Parra and ALICO did not waive the agreement in the Supervising Master General Agreement to arbitrate disputes relating to the four master general agents when they entered into the General Release Agreement.

The forum selection clause in *Patten Securities* states that the defendant "consents and will submit to the jurisdiction of the courts in the State of New Jersey...." *Patten Securities Corp., Inc.,* 819 F.2d at 407. While the defendant in *Patten Securities* agreed to submit to a New Jersey court's jurisdiction, the defendant did not agree to exclude all other forums.

The General Release Agreement's forum selection clause accomplishes a different purpose from the clause interpreted by the Third Circuit in *Patten Securities.* The General Release Agreement states "any interpretation or adjudication" related to the agreement is to take place "in a court located in the State of Delaware United States of America." This clause prevents a party from seeking to resolve disputes arising under the agreement in any forum other than a Delaware court. While *Patten Securities* involved an agreement to submit to a forum's jurisdiction, the present dispute involves an agreement to bind the parties to one exclusive forum. Accordingly, this court finds *Patten Securities* does not apply to the present case. This court finds the General Release Agreement waived Parra and ASIAT's right to arbitrate any disputes related to the four master general agents.

2. *Did ALICO raise timely objections to the arbitral panel's jurisdiction over disputes arising under the General Release Agreement?*

Defendants argue the arbitral panel properly found ALICO waived objections to the panel's jurisdiction over disputes arising under the General Release Agreement because ALICO failed to raise timely objections. Defendants argue ALICO had notice that Parra and ASIAT sought to arbitrate disputes related to the General Release Agreement at latest in November, 1996 when Parra and ASIAT sought the production of records pertaining to the business activities of "members of the Parra organization." Because ALICO did not raise objections to arbitrating claims related to the General Release Agreement until March 10, 1998, Parra and ASIAT argue, ALICO waived a lack of jurisdiction defense pursuant to Article 21(3) of IACAC's rules.

ALICO had no reason to expect the arbitral proceeding would encompass claims arising out of the General Release Agreement. Parra and ASIAT did not expressly mention the agreement or specific claims released within it until March, 1998. The agreement's purpose was to waive claims and ALICO paid Parra to release the claims in the agreement. The agreement contained a clause requiring all adjudication and interpretation take place in a Delaware court. ALICO raised objections to the panel's jurisdiction over disputes relating to the agreement immediately upon receiving notice in March, 1998 that Parra and ASIAT sought to arbitrate related disputes. Consequently, the court finds that ALICO is likely to prevail in its argument that it raised timely objections to the arbitral panel's jurisdiction over disputes arising under the General Release Agreement.

3. *Is the General Release Agreement invalid?*

By their seventh Affirmative Defense to ALICO's complaint, defendants assert the General Release Agreement is invalid because ALICO used economic duress and coercion to force Parra to sign the agreement. Delaware law recognizes a release is invalid if obtained through duress. *Vassallo v. Haber Electric Co.,* 435 A.2d 1046, 1050 (Del.Super.Ct.1981).

Under Delaware law, a duress defense will defeat a general release only if the release was executed by physical force,

threat of force, or by unlawful threats destroying the victim's free will. *Id.* ("[T]he general test which applies is whether or not any unlawful threats found to have occurred destroyed the victim's free will and compelled him to comply with a demand for the release."). The District of Delaware has recognized that, according to Delaware law, threats that are lawful but wrongful may be sufficient to constitute duress. *See Reiver v. Murdoch & Walsh, P.A.,* 625 F.Supp. 998, 1013–1014 (D.Del.1985).

To prove Parra signed the General Release Agreement under duress, defendants must show, at minimum, ALICO committed a wrongful act; this act overcame Parra's will; and Parra had no adequate legal remedy to protect his interest. *See id.* Defendants allege ALICO committed wrongful acts by demanding Parra execute the General Release Agreement when "ALICO knew that as a result of its tortious conduct, Parra was in a[sic] economically precarious and vulnerable position .... " The court finds that defendants do not allege ALICO committed any unlawful or wrongful acts constituting duress in their Answer or supplemental papers. Furthermore, by bringing an arbitration proceeding under the Supervising Master General Agent's Agreement's arbitration clause, Parra demonstrates he was able to protect his interests. Based upon defendant's allegations, the court finds ALICO is likely to prevail that the General Release Agreement is not invalid for duress.

By their sixth Affirmative Defense, defendants assert the General Release Agreement is invalid because ALICO fraudulently induced Parra to sign the agreement. Defendants allege Parra signed the agreement based upon ALICO's misrepresentations that the agreement released claims related to the four master general agents only "for the remainder of the International Dollar Business ("the IDB") and that the IDB would be eliminated in a few months." Defendants allege ALICO would not allow Parra to have the General Release Agreement translated into Spanish, and would not allow Parra time to consult an attorney.

■ Delaware law recognizes a release may be voidable if obtained through fraud or misrepresentation. *See Dougherty v. Mieczkowski,* 661 F.Supp. 267, 274 (D.Del.1987); *Alabi v. DHL Airways, Inc.,* 583 A.2d 1358, 1361–62 (Del.Super.Ct.1990). The party alleging fraud or misrepresentation must show "(1) that there was a misrepresentation; (2) that the misrepresentation was either fraudulent or material; (3) that the misrepresentation induced the recipient to enter into the contract; and (4) that the recipient's reliance on the misrepresentation was reasonable." *Alabi,* 583 A.2d at 1361–62 *quoting* Restatement (Second) of Contracts, § 164. A misrepresentation is fraudulent if the maker: "(a) knows or believes that the assertion is not in accord with the facts[;] or (b) does not have the confidence that he states or implies in the truth of the assertion[;] or (c) knows that he does not have the basis that he states or implies for the assertion." *Id.* at 1362 *quoting* Restatement (Second) of Contracts, § 162. A misrepresentation is material "if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." *Id.*

The court declines to rule on this issue because defendants have not yet placed in the record evidence which would allow the court to evaluate the merits of this defense.

■ To invalidate a forum selection clause on the grounds of fraudulent inducement, the party challenging the clause must show that the clause itself was procured through fraud. *See Moses v. Business Card Express,* 929 F.2d 1131, 1138 (6th Cir.) ("there must be a well-founded claim of fraud in the inducement of the clause itself, standing apart form the whole agreement" to challenge the enforcement of a forum selection clause), *cert. denied,* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991); *Nemo Assoc., Inc. v. Homeowners Marketing Servs. Int'l, Inc.,* 942 F.Supp. 1025, 1028 (E.D.Pa.1996) ("[T]o invalidate a forum selection clause on the grounds of fraudulent inducement, the party challenging the clause must show that the clause itself was procured through fraud."). Defendants do not allege the forum selection clause in the General Release Agreement was obtained through fraud or duress. Therefore, the court does not reach whether the forum selection clause in the General Release Agreement is invalid.

4. *Are damages related to Parra's heart attack arbitrable?*

 ALICO contends that references in Parra and ASIAT's third amended Statement of Claim to a heart attack suffered by Parra constitute "personal injury claims" which lie outside the scope of the arbitration provision in the Supervising Master General Agency Agreement. ALICO argues, consequently, Parra and ASIAT should be enjoined from introducing the heart attack in the arbitration proceedings.

The Supreme Court has held the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . ." *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24–25, 103 S.Ct. 927. This court will not enjoin Parra and ASIAT to the extent they claim Parra's heart attack is related to disputes arising under the Supervising Master General Agent's Agreement. Parra and ASIAT's claims will be subject to injunction, however, to the extent they claim Parra's heart attack is related to disputes involving the General Release Agreement.

C. *Will ALICO be irreparably harmed if forced to arbitrate the General Release Agreement?*

The Third Circuit recognizes a party is irreparably harmed as a matter of law if forced to arbitrate a matter that it has not agreed to arbitrate. *PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 515 (3d Cir.1990) ("the harm to a party would be per se irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority."). Accordingly, this court finds that ALICO would be irreparably harmed if forced to arbitrate claims arising out of the General Release Agreement.

D. *Will Parra and ASIAT be harmed if preliminarily enjoined from arbitrating disputes related to the General Release Agreement?*

This court finds that defendants will not be harmed if temporarily enjoined from arbi-trating disputes related to the General Release Agreement. Enjoining the arbitration of disputes arising out of the General Release Agreement will prevent defendants only from arbitrating disputes related to the four master general agents listed in the General Release Agreement. A temporary injunction will not prevent defendants from arbitrating other disputes arising under the Supervising Master General Agent's Agreement, including disputes relating to Parra's other agents and brokers. Defendants may still pursue their claim in a Delaware Court that the General Release Agreement is invalid.

E. *Is it against the public interest to issue a preliminary injunction preventing the defendants from arbitrating disputes arising under the General Release Agreement?*

The Third Circuit recognizes "[i]f a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside of the substantive scope of the agreement, it is obliged to enjoin arbitration." *Id.* at 511. Allowing arbitrators to decide whether the parties agreed to submit a dispute to arbitration absent express agreement by the parties to this effect goes against "the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration . . . ." *First Options of Chicago, Inc.,* 514 U.S. at 945, 115 S.Ct. 1920. Accordingly, the court finds it is in the public interest to issue a preliminary injunction preventing the defendants from arbitrating disputes arising under the General Release Agreement.

III. *CONCLUSION*

 The court has jurisdiction to determine whether the parties agreed to arbitrate disputes arising out of the General Release Agreement. By the terms of the forum selection clause in the General Release Agreement, the parties did not agreed to arbitrate disputes arising out of the agreement. ALICO has demonstrated that it is likely to prevail on the merits that the General Re-

lease Agreement is valid and that ALICO did not waive objections to the panel's jurisdiction over the agreement. ALICO has demonstrated it will be irreparably harmed if the court does not enjoin defendants from arbitrating disputes relating to the General Release Agreement. ALICO has demonstrated a preliminary injunction is not against the public interest. Consequently, ALICO has demonstrated that it is entitled to preliminary injunctive relief as to these claims.

The court will issue an Order in accordance with this Memorandum Opinion.